# Richmond

## LOUISE L. NELSON v. PERCY C. LIGGAN, ADM'R, ETC.

June 20, 1949.

Record No. 3496.

Present, All the Justices.

The opinion states the case.

*Allen, Allen & Allen,* for the plaintiff in error.

*Harrison C. Eacho* and *Stuart A. Eacho,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Percy C. Liggan, administrator of the estate of Julia Maude Liggan, deceased, brought this action by notice of motion against Mrs. Louise L. Nelson to recover $6,713.95, alleged to be the property of his intestate, held in the possession of Mrs. Nelson. The sum was said to be made up of $5,213.95, proceeds from the sale of certain real property of his intestate and $1,500 in cash kept by the deceased in her home to take care of her funeral expenses.

Mrs. Nelson, in her grounds of defense, denied that she owed the plaintiff the sum claimed or any part thereof, and asserted that any property in her possession, which formerly belonged to plaintiff's intestate, was lawfully given to her by Mrs. Liggan during her lifetime.

There was a trial before a jury, which resulted in a verdict for the plaintiff in the sum of $4,000, upon which verdict the court rendered judgment.

The administrator and Mrs. Nelson will be hereinafter sometimes referred to as plaintiff and defendant, the respective positions occupied by them in the trial court. Mrs. Julia Maude Liggan will be referred to as the decedent.

Mrs. Nelson asks us to reverse the judgment on the grounds that the court erred, first, in refusing to grant her motions to strike the evidence of the plaintiff made at the conclusion of plaintiff's evidence and at the conclusion of all of the evidence; and, second, in refusing to set aside the verdict of the jury as contrary to the law and the evidence and without evidence to support it. She contends that plaintiff failed to trace any money of the decedent coming into her hands other than the sum of $4,500, which amount she claims was a completed gift to her from the decedent in the latter's lifetime.

Bearing in mind the rule that the verdict resolved all con-

flicts, if any, in the evidence in favor of the plaintiff, the record shows the following facts and circumstances:

Plaintiff and defendant are brother and sister. Their mother, Mrs. Julia Maude Liggan, a widow aged between 77 and 80 years, died Sunday, March 23, 1947, in the home of Mrs. Nelson, also a widow. Mrs. Liggan left surviving her five sons and three daughters, two other children having previously died. She possessed at her death two houses and lots valued at between $7,000 and $7,500. She had given defendant in 1947 a house and lot, in addition to the gift in 1937 of the house in which both of them had lived for about 12 years. The deceased possessed at her death two other houses and lots, from which she had derived a small rental income that had been used for her living expenses and the care of the household. Living in the same house with Mrs. Liggan and Mrs. Nelson was Willie Everett, 75 years old, a brother of the deceased. Everett was in poor physical condition, and earned between $12 and $15 a week when he was able to work, and was more or less dependent upon his sister and niece for his expenses and personal attention.

Thirty days or more after the death of his mother, Percy C. Liggan qualified as the administrator of her estate. On July 29, 1947, his attorney wrote Mrs. Nelson requesting her to deliver all monies in her possession left by her mother and especially the proceeds from a check of $5,500, arising through the sale of certain real estate by Mrs. Liggan on January 3, 1947. On September 8, 1947, he repeated that request. Not receiving a reply, counsel on October 31, 1947, instituted this proceeding and wrote Mrs. Nelson asking her to advise him what time it would be convenient for the appraisers to make inventory of the estate of her mother.

On November 18th of the same year, counsel advised Mrs. Nelson that the appraisers would visit her home on November 26th. On the latter date the appraisers interviewed her there, and were told that her mother left no personal property.

Mrs. Nelson said that she did not answer the first two

letters; but upon receipt of the letter of October 31st, consulted her attorney, and told him to answer the letter and give her consent for the appraisers to come to her house at a date convenient to them.

The plaintiff testified that his mother told him the day before she died that she had $1,500 in the house put away for her burial, having previously told him on several former occasions that, "You all won't have to worry about the money for burying me. I got the money right here." He said that he had received a bill for funeral expenses amounting to $983.68, and that no personal effects had come into his hands from the estate of his decedent to pay the same.

C. S. Wallerstein, a real estate agent, testified that, on January 3, 1947, he made sale of a parcel of property for the decedent for the sum of $5,500; that on January 10, 1947, he delivered to Mrs. Liggan, in person, his firm's check, drawn on the Bank of Commerce & Trusts, Richmond, Virginia, for $5,213.95, the amount due after deducting his commission. He further said that he had been handling the real estate of Mrs. Liggan, and had been remitting to her the proceeds from the rental of two pieces of real estate in the city of Richmond.

Mrs. Ester Liggan, who married a grandson of Mrs. Julia Maude Liggan, testified that, in January, 1946, she nursed the deceased during a period of her illness; that in consideration therefor, Mrs. Liggan made her a gift of ten dollars which she took from a little box, kept under lock and key; and that while she did not know what was in the box, she thought it contained a substantial sum in large denominations.

Mrs. L. M. Liggan, a daughter-in-law of the deceased, testified that she visited her mother-in-law about two or three days before she died, and that the old lady told her that she always kept her burial expenses in the house. This witness further said that on the day following the death of Mrs. Liggan, Mrs. Nelson said, "Mother always kept her burial expenses in the house."

There was no evidence that any of the alleged $1,500

in the house ever came into the possession of the defendant, as to who got it, or what became of it.

On the part of the defendant, the following evidence was presented:

Mrs. Nelson testified that she had lived with her mother for twelve years since the death of her father; that her mother had heart trouble, "was blind in one eye and could hardly see out of the other;" that her physical condition was such that it was not safe to leave her alone; and that she had for more than seven years constantly nursed and waited on her night and day, without help from any one, except from Mrs. Ada Gordon, her sister, and a neighbor. She said that her mother endorsed the check for $5,213.95 received from Wallerstein, and asked her to cash it and deposit it in a bank; that she then also endorsed her name on it and deposited it in a savings account, in the Central National Bank, Richmond, Virginia, to the credit of her mother; that she did not recall the date of the deposit; that on March 21, 1947, her mother said: "I know exactly what I am going to do, I am going to write a note and I want you to get my money out of the bank and I want you to have it, because you got my brother here to look after and he don't have anything, and if you don't look after him they are going to have to put him in the poor house;" that her mother then went in the dining room, sat at a table, and wrote a note as follows: "Please let my daughter, Mrs. Nelson, have my money $4,500. (Signed) Mrs. Julia Liggan."; that with this note and the pass book, she went to the bank, and drew out $4,500, which was all that was in the bank at that time; and that "I brought it back and gave it to her and she gave it back to me and told me that she wanted me to have it because I had waited on her for seven years, and she didn't have anybody else to help her, and none of the other children cared anything about her."

Mrs. Nelson further said that she attended to all of the business affairs of her mother because of her mother's illness; that, with her mother's consent, she signed and endorsed her

rent checks; and that with her mother's help and $32.50 a month, which she got from a rented house, the family was taken care of, including her uncle, Willie Everett, who was old and unable to make enough to properly feed and clothe himself.

Mrs. Nelson was unable to account for the difference between the $4,500 which she drew out of the bank at the request of her mother and the amount of the check for the sale of the real estate, which she had deposited in bank to the account of her mother. She said that she did not know that she was supposed to answer the letters from the attorney for the administrator, or that it was necessary to tell anybody about the business between herself and mother, and that she had consequently referred the letters to her attorney to be answered. She denied that her mother had set aside any money in the house for the funeral expenses, or had any in the house at the time of her death, or that she (Mrs. Nelson) had told any one so. She declared her mother had told her "that when she died she wanted her burial expenses to come out of her estate."

Robert L. Liggan, son of Mrs. Julia Maude Liggan, testified that his mother had heart trouble for years, was practically blind, and was unable to look out for herself; that Mrs. Nelson looked after her and attended to her at all hours of the day and night until her death; that with the exception of himself, none of the other children looked after her; that he visited his mother from two to three times every day; that he saw her three or four times on the day before she died and that she was in her right mind; that she had told him many, many times that she wanted Louise (the defendant) to have everything she had, including her money on deposit in the bank; and that she was going to get it out and give it to Louise because: "She was the only one that looked after her and ever cared anything for her." He said he was present when his mother told Mrs. Nelson to go to the bank and get the $4,500 and present when Mrs. Nelson brought it back and gave it to his mother, and that he saw his mother give the money back to

her daughter as a gift. He identified the note directing the payment of $4,500 to his sister as in the handwriting of his mother.

J. C. Talley, a real estate broker, had known Mrs. Liggan in a business way for seven or eight years before her death. He stated he had sold two or three pieces of property for her, and that frequently he had gone by her home to see her; that in March, 1947, he talked with her about the affairs between her and her daughter, Mrs. Nelson; and said that "Well, most every time that I was there she was always praising this young lady, saying that she was the one that done all for her, and what she had she was certainly going to give to her. That is all that she ever talked to me about.'"

Walter B. Liggan, another son of the deceased, testified that he "ate three meals a day" with his mother and Mrs. Nelson; that his mother was sick and feeble; and Mrs. Nelson looked after her day and night and he didn't know what would have happened to his mother if it hadn't been for his sister. He said that he had talked to his mother about the money she had in bank; and that, "She said that whatever she had, money or property, she wanted it to go to my sister. The one that looked out for her."

Upon cross-examination, he said she made the above statement at least fifty times during the years 1946 and 1947, having repeated the same to him on several of the days before she died.

Mrs. Ada Gordon, a daughter of the deceased, said her mother, three days before she died, told her that "she was going to give Mrs. Nelson what she wanted her to have, and nobody had anything to do with it."

Mrs. Ora M. Faircloth, who lived next door to Mrs. Liggan, testified that Mrs. Liggan had been a sick woman for seven or eight years and Mrs. Nelson looked after her all the time, never leaving the house except on business during the day; that Mrs. Nelson had called on her at times for assistance during sick spells of Mrs. Liggan because there was no one else to render help; and that she knew Willie

Everett was in poor health and required someone to look after him.

There was introduced an undated letter to Mrs. Liggan from another of her daughters, which contained a protest over the favoritism shown by Mrs. Liggan to Mrs. Nelson, and reminded Mrs. Liggan that her property had been derived by her from her husband, and she had other children who were entitled to some consideration in its disposal. This letter evidenced the feeling engendered because of the previous gifts known to have been made to Mrs. Nelson by her mother.

We have had frequent occasion to define what is necessary to establish a valid gift *inter vivos*. When a donee claims title to property in such a gift, the burden of proof rests upon him to establish by clear and convincing evidence every fact and circumstance necessary to show the validity of the gift. The intention of the donor to part with title and delivery of possession are essential requirements. Virginia Code, 1942 (Michie), section 5142, and notes; and Volume 5, Digest of Va. & W. Va. Reports (Michie), Gifts, section 31, page 233, *et seq.*, and cases cited.

In *Thomas* v. *First Nat. Bank*, 166 Va. 497, 504, 186 S. E. 77, we said that the common elements necessary to constitute a gift *inter vivos* are: "(1) The gift must be of personal property; (2) possession of the property must be delivered at the time of the gift to the donee, or some other for him and the gift must be accepted by the donee; and (3) the title to the property must vest in the donee at the time of the gift."

In *Matthews* v. *Hanson*, 145 Va. 614, 134 S. E. 568, it was held:

"To make a gift of personal property, *inter vivos*, valid, it must appear that it was the intention of the donor to part with the title and vest it in the donee, and that there was a delivery of the property, actual or constructive, which divested the donor and invested the donee with all control over the property. *Mahon* v. *Johnston*, 7 Leigh (34 Va.)

317, 319; 28 C. J. 628; *Swan* v. *Swan*, 136 Va. 496, 117 S. E. 858."

In *Watkins* v. *Young*, 31 Gratt. (72 Va.) 84, 90, Christian, J., said:

"Whether the gift was an advancement or an absolute gift being a question of intention, the declarations of the donor made at the time or subsequently is competent evidence to show such intention."

In 38 C. J. S., Gifts, section 15, we find:

"A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite to a gift *inter vivos*. This intention must be inconsistent with any other theory."

The evidence does not show that any money of the decedent was traced into the possession of Mrs. Nelson other than the $4,500 claimed as a gift. No witnesses had any personal knowledge of the money or the amount actually kept by Mrs. Liggan in her house for funeral expenses, at the time of her death. In 1946, more than a year before Mrs. Liggan's death, one witness had seen a box containing an unknown amount of money. Any money in the house was, so far as the record discloses, just as accessible to Robert Liggan, Walter Liggan and Willie Everett as it was to Mrs. Nelson. Everett lived there and Robert and Walter Liggan said they visited the house daily.

It is uncontradicted that the check for $5,213.95 was deposited in the bank to the credit of Mrs. Liggan. There is no evidence that Mrs. Nelson drew out the difference between that sum and the $4,500 claimed by her as a gift. She cannot be held liable for money deposited in the bank to the credit of her mother and not shown to have come into her hands at any time.

The evidence in this case fully met the above requirements as to property traced to the possession of the defendant. The essentials were shown without any real contradiction. As to the $4,500, positive evidence disclosed the express intention of the donor to transfer her title and an acceptance by the donee. There were words of present gift simultane-

ous with the actual delivery. The donee was invested with all control over the money.

The collateral facts and circumstances are in accord with the contention of the defendant. It is not unnatural or illogical for a parent to favor the child who has been the most helpful. Here the defendant undoubtedly had borne the greater, if not sole burden in caring for her aged and infirm mother for many years. None of the other children shared this unremitting responsibility day after day and night after night. The gratitude of her mother for her labor, patience and endurance is readily understood.

The plaintiff argues that the failure of Mrs. Nelson to remember the date when she deposited the $5,213.95 check in the bank to the credit of her mother; to account for the difference between that amount and the sum of $4,500, later drawn out by her at the request of her mother; to answer the letters from the administrator; and to make known to the plaintiff, prior to the trial of the case, that she claimed the money as a gift, justified the jury in disregarding her testimony that her mother made a gift of the money to her. The answer to this is that her uncontradicted testimony was not incredible, not contrary to natural instincts, nor inconsistent with the circumstances in evidence; but was, on the other hand, amply corroborated by the evidence of other witnesses, both interested and disinterested, in the controversy.

Neither party to this proceeding claimed either alone or *in toto* the sum of $4,000. The verdict of the jury is not only speculative as to the amount awarded, but arbitrary in the rejection of the uncontradicted evidence for the defendant. It discloses a misconstruction of the instructions. given to them or a confusion in their minds as to the respective rights of the parties.

The right and duty of this court to overrule the finding of a jury plainly contrary to the evidence or without evidence to support it is well established and frequently exercised. *Blake* v. *Smith & Son*, 147 Va. 960, 133 S. E. 685; *Stuart* v. *Johnson*, 149 Va. 157, 140 S. E. 269; *Garrison* v. *Burns*, 178

Va. 1, 16 S. E. (2d) 306; *Moore* v. *Vick*, 181 Va. 157, 24 S. E. (2d) 429; *Purcell* v. *Purcell*, 188 Va. 91, 49 S. E. (2d) 335.

There being sufficient evidence for us to decide the case upon its merits, the judgment is reversed, the verdict set aside, and final judgment is now entered dismissing the suit of the plaintiff. Virginia Code, 1942 (Michie), section 6365.

*Reversed and final judgment.*