# Richmond

## LOUISE L. NELSON v. PERCY C. LIGGAN, ADM'R, ETC.

November 21, 1949.

Record No. 3496.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Allen, Allen & Allen,* for the plaintiff in error.

*Harrison C. Eacho* and *Stuart A. Eacho,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

UPON REHEARING.

This case was decided by this court on June 20, 1949, 189 Va. 637, 53 S. E. (2d) 798, and the judgment of the trial court reversed, the verdict of the jury set aside, and a final judgment entered, dismissing the suit of the plaintiff, Percy C. Liggan, administrator, etc. It is again before us upon a rehearing granted pursuant to Virginia Code, 1942 (Michie), section 6372.

The principal contention of the plaintiff, Percy C. Liggan, administrator of the estate of Julia Maude Liggan, revolves around the disposal of the proceeds of the check for $5,213.-95, payable to Mrs. R. L. Liggan, his intestate.

The plaintiff insists that the court failed in the original opinion to properly consider and evaluate the testimony of Mrs. Nelson and to give due weight to the finding of the jury. Specifically, it is contended that "nowhere in the record did Mrs. Nelson testify that her mother endorsed the check for $5,213.95 received from Wallerstein, and asked her to cash it and deposit it in a bank; that she, (Mrs. Nelson) then also endorsed her name on it and deposited it in a savings account, in the Central National Bank, Richmond, Virginia, to the credit of her mother;" and, that there are two statements in the opinion which are not true according to the record.

The alleged misstatements are:

(1) "The evidence does not show that any money of the decedent was traced into the possession of Mrs. Nelson other

than the $4,500 claimed as a gift;" and (2) "It is uncontradicted that the check for $5,213.95 was deposited in the bank to the credit of Mrs. Liggan."

The best answer to the contentions of the plaintiff is in the record itself.

Exhibited in evidence was a check for the proceeds from the sales of Mrs. Liggan's real estate, drawn on the Bank of Commerce & Trusts, Richmond, Virginia, by Wallerstein Real Estate Company, in the sum of $5,213.95, to the order of Mrs. R. L. Liggan. It was duly certified on its face by the Bank of Commerce & Trusts. On its back it bore the following endorsements in the order named: "Mrs. R. L. Liggan, Mrs. Louise Nelsen, 1111 N. 35th St.," and "Mrs. Louise Nelsen." Also on its back, in black ink, there was stamped "SAVINGS DEPARTMENT I," and, in red ink: "PAY TO ORDER OF ANY BANK OR BANKER. ALL PRIOR ENDORSEMENTS GUARANTEED · JANUARY 1—, 19——. CENTRAL NATIONAL BANK, RICHMOND, VIRGINIA" (exact date not decipherable). The check also bore on its face a perforation stamp: "PAID —1-15-47."

On direct examination Mrs. Nelson said that the first name, "Mrs. R. L. Liggan" appearing on the back of the check was written by her mother, but that the name "Mrs. Louise Nelsen" on the "bottom part" was written by herself.

On cross-examination, when her attention was called to the middle signature, she identified it as hers, stating that she had not referred to the second signature before because she had not seen it until her attention was called to it. She said, "I can't half-way see, don't have my glasses with me."

On the direct examination of Mrs. Nelson, the following questions were asked and answered:

"Q. When Wallerstein Real Estate Company sold that real estate and delivered the check for the sum of $5,213.95, payable to Mrs. R. L. Liggan, what became of that check? Do you know? What did you do with it?

"A.  *I took it and cashed it for her, she asked me to do it. Wanted me to have the money.*

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"Q.  What did you do with this check?

"A.  What do you mean?

"Q.  This check here.  What bank did you put it in?

"A.  Central National Bank.

"Q.  Whose name did you put it in the bank in?

"A.  Mrs. Liggan's name, my mother.

"Q.  Did the bank give you a book?

"A.  Yes, sir.

"Q.  Was the money put in a savings account, or in a checking account?

"A.  Savings account.

"Q.  They gave you a savings bank book?

"A.  Yes, sir."  (Italics added).

Referring to the March 21, 1947, note of her mother, which reads, "Please let my daughter Mrs. Nelsen have my money $4,500," Mrs. Nelson was asked:

"Q.  Then what did you do with this note when she wrote it?

"A.  I took it and went to the bank and got her money.

"Q.  Did you have the pass book with you?

"A.  Yes, sir.

"Q.  How much money was there when you got it out?

"A.  $4,500.

"Q.  *What did you do with the money then?*

"A.  *I brought it back and gave it to her and she gave it back to me and told me that she wanted me to have it because I had waited on her for seven years, and she didn't have anybody else to help her, and none of the other children cared anything about her.*  That is exactly what she told me."  (Italics added).

On the cross-examination of Mrs. Nelson, this appears:

"Q.  How did you get this $4,500 out of the bank?

"A.  I went there and got it by that note, and I had her bank book.

"Q. In other words, the bank didn't retain this note at all?

"A. No, sir.

"Q. You just showed it to them?

"A. Yes.

"Q. And gave them the bank book?

"A. They know me there, and I went and got it. They know me, because I attend to her business all the time.

"Q. So you just went to the bank and showed them that note?

"A. Yes.

"Q. And took the book?

"A. Yes, sir.

"Q. And you got the money?

"A. Yes, they know me there, because I attend to my mother's business all the time.

"Q. Have you got the pass book?

"A. No.

"Q. Where is that?

"A. They took it away. Left it there."

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Q. You did cash that check at the savings window?

"A. Yes, I did.

"Q. Did you that day deposit it to the credit of your mother, or was the deposit made later?

"A. I don't remember.

"Q. In other words, you cannot tell us when the amount of money your mother received from the Stone estate was deposited in the Central National Bank to her credit, you have no idea?

"A. No, I don't.

"Q. *Did you deposit it?*

"A. *Yes, I took it there for her.*

"Q. What sum was it?

"A. It was $4,500.

"Q. She didn't deposit this total amount of this check?

"A. No, sir.

"Q. But later on deposited $4,500?
"A. Yes.
"Q. You don't know when that was done?
"A. No, I cannot recall." (Italics added).

Mrs. Nelson said that her transactions were had with the Broad Street Branch of the Central National Bank of Richmond, Virginia.

The endorsements on the check are not in conflict with the testimony of Mrs. Nelson as to how the instrument was handled by the bank. The stamp "SAVINGS DEPART-MENT I" indicates it was handled by Clerk No. 1 in the savings department of the bank. The two signatures of Mrs. Nelson on the back indicate that she was required to sign the second time in order to identify her first signature. We know of no rule or practice which forbids a person cashing a check from leaving a portion of its proceeds as a deposit in the bank. Ordinarily, checks carried to a bank for the sole purpose of being cashed are not handled at the window of the savings department, although that may be done for the convenience of the check holder.

It is evident from the record, the claim of the brother that his sister had appropriated to herself money not belonging to her, the examination of Mrs. Nelson and her answers, and the course of events in the proceeding, that ill feeling existed between the parties. It is also apparent that Mrs. Nelson was not quite as definite in some of her answers as a more learned and experienced person might have been, but her explanations cleared up the situation. On the controlling and specific issue whether or not the money in question was given to her, she was positive, direct, and unequivocal. We can find no evidence to the contrary. On that issue she was supported by documentary proof and by the testimony of four witnesses: her brothers, Robert L. and Walter Liggan, her sister, Mrs. Ada Gordon, and J. C. Talley, a real estate agent.

Mr. Talley, a disinterested witness, said he often talked to Mrs. Liggan about the affairs between her and her daughter,

the last talk being in March, 1947. Said he: "Well, most every time that I was there she was always praising this young lady, saying she was the one that done all for her, and what she had she was certainly going to give to her. That is all she ever talked to me much about."

It will be noted that Robert L. and Walter Liggan and Mrs. Gordon, two brothers and a sister of the plaintiff and the defendant, testified against their interests in favor of Mrs. Nelson. The letter of another sister to Mrs. Liggan declared a protest against the action of the latter in preferring Mrs. Nelson in the disposal of the mother's property.

The record we have quoted discloses that Mrs. Nelson did testify "that her mother endorsed the check for $5,213.95 from Wallerstein and asked her to cash it," and that she, Mrs. Nelson, "also endorsed her name on it," and "deposited it in a savings account in the Central National Bank, Richmond, Virginia, to the credit of her mother; that she did not recall the date of the deposit;" and that when the money was deposited in the Central National Bank to the credit of her mother, she, Mrs. Nelson, "took it there for her."

On cross-examination, when she was questioned more closely about her handling of the check and the deposit of its proceeds, and the date thereof, she explained that the whole amount of the check was not deposited at the date she cashed it at the savings window of the bank; but that $4,500 was deposited to the credit of her mother "later on;" but she could not remember when that was done. She, however, consistently held to her statement that her mother wanted her to have all of her money and actually gave it to her in pursuance of that intention.

The author of the original opinion admits that in the former two statements of facts, to which the plaintiff takes exception, the amount of $5,213.95 was erroneously employed instead of the sum of $4,500. In considering the issue whether or not Mrs. Nelson had borne the burden of proving that she had received a valid gift *inter vivos* from

her mother, the author, in view of the emphasis placed on the amount represented by the check, overlooked the subsequent explanation of Mrs. Nelson that she deposited only the sum of $4,500 in the bank to the credit of her mother.

Plaintiff in his brief argued that Mrs. Nelson "had continued in possession and control of the funds derived from a check in the sum of $5,213.95, excepting such sum, if any, that may have been spent from January 10, 1947, the date of the check, to March 21, 1947, date of the death of Mrs. Julia Maude Liggan or the total of 71 days." As we have shown, this is not supported by the record. We have shown what became of $4,500. Prior to the sale of the real property for which the check was given, Mrs. Liggan, a sick and helpless woman, had an income of only $90 per month, according to the record. We do not know what amount she expended in supporting herself and her dependent brother, or what debts, if any, she had contracted and was obligated to pay out of the remaining $713.95, after the receipt of the check. Mrs. Nelson said that she had no money in her possession which belonged to her mother at the time of the latter's death.

In view of what we have said, two corrections should be made in our original opinion, as follows:

(1) The recital in the statement of facts that Mrs. Nelson testified "that her mother endorsed the check for $5,213.95 received from Wallerstein and asked her to cash it and deposit it in the bank; that she then also endorsed her name on it and deposited it in a savings account in the Central National Bank, Richmond, Virginia, to the credit of her mother" should be corrected to read: "that her mother endorsed the check for $5,213.95 received from Wallerstein and asked her to take it to the bank and cash it; that she then also endorsed her name on it, cashed it, and subsequently deposited $4,500 of the amount in a savings account in the Central National Bank, Richmond, Virginia, to the credit of her mother;" and,

(2) The statement that "It is uncontradicted that the

check for $5,213.95 was deposited in the bank to the credit of Mrs. Liggan. There is no evidence that Mrs. Nelson drew out the difference between that sum and the $4,500 claimed by her as a gift. She could not be held liable for money deposited in the bank to the credit of her mother and not shown to have come into her hands at any time," should be corrected to read: "'It is uncontradicted that the sum of $4,500, proceeds from the check from $5,213.95 was deposited in the bank to the credit of Mrs. Liggan. The undisputed evidence is that Mrs. Liggan intended to give, and did give all of her money to her daughter. No witness testified to the contrary."

As we see it, the errors in the original opinion were immaterial to the controlling issue, and the correction thereof in no wise affects our former conclusion.

This case does not turn upon a conclusion from conflicting evidence. There is no refutation by testimony or circumstances of the testimony of Mrs. Nelson on the controlling issue, that is, whether Mrs. Liggan made a completed gift *inter vivos* of the money in question. It was not within the province of the jury arbitrarily to reject the uncontradicted testimony of the defendant, supported by corroborating witnesses and documentary proof.

The wish, desire and intention of Mrs. Liggan to vest in her daughter, Mrs. Nelson, the ownership of the unexpended proceeds from the $5,213.95 check was manifest from her words, her acts, and her writing, as shown in our original opinion. It is clear that under the circumstances and relations existing between them, she gratefully recognized the moral claim of her daughter to her bounty as superior to any claim of her remaining children. She took the practical steps necessary to make her appreciation and gratitude effective in her lifetime. The application of the law to the intention and completed acts of the donor should be not less just.

The applicable law has been heretofore stated, and we are of opinion that the case has been correctly decided both

according to law and good conscience, and we, therefore, adhere to the conclusion reached in the former opinion.

The judgment of the trial court will, therefore, be reversed, the verdict of the jury set aside and final judgment entered dismissing plaintiff's suit.

*Reversed and final judgment.*

MILLER, J., dissenting.

The notice of motion for judgment filed by Percy C. Liggan, administrator of Julia Maude Liggan, deceased, sought recovery of $6,713.95. The sum was made up of two items. One of $1,500.00 cash, alleged to have been in the possession of decedent at the time of her death, which was on March 23, 1947, in defendant's home. The other and larger item of $5,213.95, represented the funds from a check dated January 10, 1947, drawn by Wallerstein and Company, payable to Mrs. R. L. Liggan (who was the same person as Julia Maude Liggan) in payment for a parcel of real estate owned by her and recently sold by that company as her broker.

It was charged that Louise L. Nelson, defendant below, and plaintiff in error in this court, had wrongfully taken and appropriated these sums totaling $6,713.95, to her use.

Several days prior to June 1, 1948, the day on which this case was tried before a jury in the lower court, an order was entered requiring defendant to file her grounds of defense on or before May 31, 1948. She did not strictly comply with that order, but on June 1, 1948, the morning of the trial presented her written grounds of defense to the court. As her defense she denied that she had appropriated or received the $1,500.00 item, or the sum of $5,213.95, but admitted that she had received and held as her own $4,500.00, a part of the sum of $5,213.95, received from the sale of the real estate. She asserted that it had been given to her by her mother and that the gift was evidenced by a writing signed by her mother and dated March 21,

1947. No mention was made in the grounds of defense that the fund or any part thereof was deposited or ever had been deposited in a bank, or that any deposit book had been delivered to her.

It will thus be seen that she denied knowledge or receipt of the $1,500.00, charged to have been appropriated by her, and denied recipt of the sum of $5,213.95, but did admit receipt of $4,500.00 part thereof, which, however, she claimed was a gift.

The verdict returned by the jury was for $4,000.00.

They were well justified in rejecting plaintiff's claim that defendant had appropriated the item of $1,500.00, cash, for there is but little evidence to sustain the administrator's claim concerning that specific sum. But the verdict of $4,000.00 constitutes neither item claimed by plaintiff in his notice of motion, nor is it the sum that defendant admits having received. That finding is definitely unresponsive to the claim and case presented by either litigant. It is so at variance with the evidence presented that plaintiff in error in her petition to this court says, "Neither the plaintiff, nor the defendant, claimed that sum or any combination that would total that sum."

The record presents a picture of distinctly conflicting evidence and definitely contradictory statements in defendant's own testimony. It discloses a trial in which neither litigant sufficiently developed the available facts necessary to a full and correct understanding by the jury of the true situation. The name, "Mrs. R. L. Liggan," across the back of the check, which deferidant says was written by her mother and is alleged to be her endorsement of the check, bears no similarity to the signature on the writing which reads, "Please let my daughter Mrs. Nelson have my money, $4,500 (signed), Mrs. Julia Liggan.", which writing plaintiff asserts she presented to the Central National Bank, along with her mother's deposit book and received from the bank $4,500.00 without surrendering to the bank the written order. That the bank would have made payment of $4,500.00 upon

such a note and presentation of a deposit book by one other than the depositor and then not have retained the note, the only written order allegedly authorizing the payment, is difficult to understand.

A minute and careful examination of the original perforated and certified check drawn on the Bank of Commerce and Trust for $5,213.95, discloses that it was not as such deposited in the Central National Bank. In faint letters stamped on the back which are well nigh indistinguishable and which were not pointed out upon the first argument of this case before us, it may be seen that the check was cashed and not deposited. The contradictory statements made by defendant, Louise L. Nelson, and the obscure lettering upon the certified and perforated check indicating that it was cashed, led, I think, to the inaccuracy in the factual recitals appearing in the first opinion reported in 189 Va. 637, 53 S. E. (2d) 798, which were to the effect, that only $4,500.00 was traced into defendant's possession, and that the check of $5,213.95, was deposited in the bank to the credit of Mrs. Liggan. However, it now definitely appears that defendant, Louise L. Nelson, did not deposit that check to her mother's credit but cashed it.

Though she says she deposited $4,500.00 to her mother's account, she wholly fails to account for the balance of $713.95, and no bank book or other record whatever disclosing the deposit of any sum was ever produced in evidence. In addition, upon comparing the two signatures claimed by her to have been made by decedent before her death, i. e., one on the back of the check and one to the note by which defendant says she received the $4,500.00 from the bank, it is made evident that they were not written by the same person.

In my opinion, the jury were justified in believing that no gift was made by Julia Maude Liggan to her daughter of the $5,213.95, or any part thereof. But they were not entitled upon the evidence before them to award a verdict of $4,000.00 for defendant admitted that she obtained $4,500.00

by presentation of the note and deposit book to the bank and that such was the sum given to her. The verdict of $4,000.00, under these circumstances, is in and of itself a quite convincing fact that the jurors were confused and did not understand the exact issues involved or properly evaluate the evidence.

The administrator earnestly contends that no part of the check of $5,213.95, was ever deposited to the credit of Mrs. Liggan in the Central National Bank. No official or employee of the bank was called by either litigant as a witness. Whether or not a deposit was made, and if so, what amount, as well as upon what authority it was paid out to defendant could be definitely established by production of the bank's records and testimony of its employee who made any such payment. With such evidence, all facts concerning the deposit, if ever made, and the withdrawal of the funds could be definitely ascertained and placed before the jury.

If no deposit was made as contended by the administrator, and the testimony of Mrs. Nelson thus shown to be false in that important respect, the jury would be clearly and fully justified in concluding that no gift of any part of the fund was ever made by the mother to her daughter.

In my opinion, the judgment for $4,000.00 should be reversed and a new trial awarded, thus affording full opportunity to both litigants to present all pertinent and relevant facts to the jury, which obviously was not done at the trial in the lower court.

BUCHANAN, J., concurs in this dissent.