Edwin W. PAULEY and Barbara Jean Pauley, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 26376.

United States Court of Appeals, Ninth Circuit.

April 21, 1972.

Richard Perkins (argued), Joseph M. Howard, Elmer J. Kelsey, Johnnie M. Walters, Asst. Attys. Gen., Washington, D. C., Robert L. Meyer, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellant.

Stanton H. Zarrow (argued), Bennett W. Priest, Maynard J. Toll, of O'Melveny & Myers, Los Angeles, Cal., for plaintiffs-appellees.

Before MERRILL, KILKENNY and TRASK, Circuit Judges.

MERRILL, Circuit Judge:

In this action taxpayer [1] seeks a refund of federal income taxes for the calendar year 1962. He asserts that he was entitled to a charitable deduction of $1,250,000 in that year instead of the lesser sum of $547,527.52 allowed by the Commissioner. The District Court allowed taxpayer the full deduction of $1,250,000 and gave judgment in his favor for a refund in the sum of $711,556.26. 25 A.F.T.R.2d ¶70–532 (1970). The United States has taken this appeal.

In December, 1962, taxpayer owned a 30⅝ per cent interest in a partnership conducting business as the Los Angeles Rams Football Club. Disputes had arisen between taxpayer and two partners aligned with him (the Pauley group) on the one hand and another partner (Daniel F. Reeves) on the other, and it was agreed that a sale of partnership interests would be accomplished by auction, each side bidding for the partnership interests of the other. The auction sale was fixed for December 27, 1962. The successful bidder was obliged to pay 25 per cent of the purchase price on the following business day and the balance between January 3, 1963, and February 15, 1963. The payments were to be made to Mr. Pete Rozelle, Commissioner of the National Football League, who was designated as trustee for the purpose of conducting the sale and carrying out the other terms of the agreement.

On December 27, 1962, several relevant events took place.

1. Taxpayer established the Edwin W. Pauley Foundation, a charitable organization,[2] by declaration of trust which recited transfer to the trust by taxpayer of that fractional portion of taxpayer's partnership interest in the Rams Football Club having a value of $1,250,000 as established by the successful auction bid.

2. Taxpayer executed an assignment to the trustees of the Foundation of that fractional portion of his partnership interest referred to in the declaration of trust. The assignment was conditioned upon acquisition of taxpayer's Rams interest by Reeves through a successful Reeves bid at the auction.[3] The Foundation's trustees acknowledged receipt.

---

1. By "taxpayer" we refer throughout to Edwin W. Pauley. Barbara Jean Pauley, his wife, is named as party since a joint return was filed.

2. The Foundation was an organization exempt from federal tax under the Internal Revenue Code of 1954, § 501(c) (3). 26 U.S.C. § 501(c) (3).

3. "ASSIGNMENT
Claude L. Cameron and
William R. Pagen
as Trustees of the
Edwin W. Pauley Foundation
I hereby transfer and assign as a gift to Claude L. Cameron and William R. Pagen, as Trustees of the Edwin W. Pauley Foundation, that fractional portion of my 30⅝ths% interest in The Los Angeles Rams Football Club partnership, which fractional portion is of a value equal to $1,250,000 as determined by the successful bid at the auction to be held today under the agreement hereinafter identified, provided Daniel F. Reeves is the successful bidder.

This assignment is made subject to all rights and obligations affecting such interest arising out of the agreement dated December 15, 1962 between myself, Frederick Levy, Jr., James H. Seley and Daniel F. Reeves and also subject to such approval, if any, as is required by the constitution of the National Football League. Dated: December 27, 1962.
/s/ Edwin W. Pauley
Edwin W. Pauley
Received and accepted this 27th day of December, 1962 and hereby authorize and confirm the authority of Edwin

3. The auction sale was conducted with Reeves emerging as the successful bidder.

4. Immediately after the auction, taxpayer sent notice to Reeves and Rozelle as follows:

"This will notify you that I have heretofore transferred to the EDWIN W. PAULEY FOUNDATION an interest in the proceeds from the sale of my interest in the Los Angeles Rams. Accordingly, therefore, you will make the checks due in 1962 to the EDWIN W. PAULEY FOUNDATION."

5. Reeves deposited 25 per cent of the sales price in escrow with Rozelle.

6. Rozelle, pursuant to the notice from taxpayer, paid to the Foundation the sum of $547,527.52.

On February 12, 1963, taxpayer advised Rozelle that of "the remaining funds due in connection with the sale of [Pauley's] interest and the * * * Foundation's interest," $702,472.48 was to be paid to the Foundation. This payment was duly made.

In his income tax return for 1962, taxpayer claimed a deduction for a charitable contribution of $1,250,000. The Commissioner allowed the $547,527.52 paid in cash to the Foundation in 1962 and disallowed the rest, taking the position that the balance constituted a gift made in 1963 rather than in 1962.

Since the assignment to the Foundation of a fractional partnership interest was conditioned on its having been sold to Reeves, the District Court treated the assignment as one of an interest in an account receivable or debt.[4] Neither party quarrels with this factual determination. We see no problem with this finding as a matter of law.

The question is whether the gift in its entirety was, for purposes of tax treatment, completed in 1962.

Under the Internal Revenue Code of 1954, § 170(a) (1), 26 U.S.C. § 170(a) (1), a deduction is allowed for "any charitable contribution * * * payment of which is made within the taxable year." This language was first employed in the Revenue Act of 1938.[5] The prior law had allowed a deduction for "contributions or gifts made within the taxable year,"[6] and it had been held that this rule permitted deduction by an accrual basis taxpayer of a legally binding pledge or promise even though payment was made in a later year. See C. H. Musselman, 1 B.T.A. 41 (1924). The language adopted in 1938 was intended to make it clear that a promise unaccompanied by payment could not give rise to a deduction. See Petty v. Commissioner, 40 T.C. 521, 524 (1963) (Atkins J., concurring).

■ "Payment," however, need not be in money. Where a charitable contribution is in the form of property rather than money, a completed gift of property constitutes payment in the amount of the fair market value of the property at the time of contribution. See Treas.Reg. § 1.170–1(c) (1), 26 C.F.R. § 1.170–1(c) (1); compare Jones v. United States, 395 F.2d 938, 941 (6th Cir. 1968). To constitute a completed gift of property the subject-matter must have been placed beyond the dominion and control of the donor. See Estate of Sanford v. Commissioner of Internal Revenue, 308 U.S.

---

W. Pauley, as our agent, to hold in his name our interest and to transfer the same to the successful bidder or his nominee.

/s/ Claude L. Cameron
 Claude L. Cameron
/s/ William R. Pagen
 William R. Pagen
 Trustees of the Edwin W. Pauley Foundation"

4. While a transfer of any partnership interest required approval by the National Football League in accordance with its by-laws, the auction agreement specified that the obligation of the successful bidder to pay the purchase price would not be defeated by reason of that requirement.

5. 52 Stat. 447, ch. 289, § 23(o), (q).

6. See, e. g:, Revenue Act of 1936, 49 Stat. 1648, ch. 690, § 23(o), (q).

39, 42–43, 60 S.Ct. 51, 84 L.Ed. 20 (1939).

 The United States points out that in his December 27, 1962, letter of notification taxpayer did not disclose the extent of the assignment to the Foundation beyond the sum due to taxpayer in that year. It contends that taxpayer thus retained the power to receive from the obligor the whole of the balance due, at least until the obligor was otherwise advised; that this constituted retention of dominion and control over the balance due; that for tax purposes no gift of that remaining portion of the debt can be said to have been completed merely by assignment until notice to the obligor was given. The United States thus contends for a rule that a gift of a debt or account receivable cannot qualify as a deduction unless and until notice is given to the obligor.

We cannot agree.

Failure to give notice to an obligor of assignment of his debt does not affect the rights or obligations of the assignor or assignee as between themselves or render the assignment ineffectual. It simply protects the debtor, who, without knowledge of the assignment, makes payment to the creditor-assignor.[7]

Dominion and control, the retention of which by a donor will render a gift incomplete for purposes of tax deduction, is dominion and control exercisable against the donee: the retention by the donor of power to direct the disposition or manner of enjoyment of the subject of the gift.[8] Here there was no such retention. As between the donor and the donee the latter had full control and unconditional ownership of the debt to the extent of $1,250,000.[9] Any ability retained by the taxpayer to receive the balance of the gift through failure to give notice to the obligor could readily be defeated by the donee through giving notice itself.[10] Thus the dominion and control with which the United States is concerned would appear to be that possessed by the donor and the donee in combination—a power secretly and retroactively to reconstitute the "gift" until such time as the donor had publicly committed himself as to its extent.

The rule contended for by the United States seems to us an eminently sensible method of placing tax-conscious donors beyond the reach of fraudulent temptation without unduly burdening taxpayers with complex procedures. However, the extent to which charitable contributions create a problem in this respect and the best method of meeting the problem are questions for legislative study and resolution. For courts to attempt to answer these questions and solve these problems by distortion of accepted concepts of dominion and control might well create innumerable problems in related areas of the law.

We conclude that the District Court correctly determined that a gift of the entire debt in the sum of $1,250,000 was completed in 1962.[11]

Judgment affirmed.

---

7. *See generally* 3 Williston on Contracts § 433 (Jaeger 3d ed. 1960).

8. *See, e. g.,* Nehring v. Commissioner of Internal Revenue, 131 F.2d 790, 793–794 (7th Cir. 1942) ; Walker v. Commissioner of Internal Revenue, 91 F.2d 297 (5th Cir. 1937) ; Christensen v. Commissioner of Internal Revenue, 40 T.C. 563, 575–577 (1963) ; *cf.* Jordan v. United States, 297 F.Supp. 1326, 1329 (W.D.Okla.1969).

9. *See, e. g.,* Driscoll v. Driscoll, 143 Cal. 528, 534–536, 77 P. 471, 473–474 (1904) ; Burkett v. Doty, 176 Cal. 89, 92–94, 167 P. 518, 520–521 (1917).

10. *See generally* Spain v. Hamilton's Administrator, 68 U.S. (1 Wall.) 604, 623–624, 17 L.Ed. 619 (1863) ; Ornbaun v. First National Bank, 215 Cal. 72, 76–77, 8 P.2d 470, 472 (1932) ; Driscoll v. Driscoll, 143 Cal. 528, 534, 77 P. 471, 474 (1904) ; 3 Williston on Contracts, *supra* note 7, §§ 433–35, 437.

11. No question has been raised as to the December, 1962, fair market value of the balance due two months later. The United States apparently is willing to overlook any slight discount in value.