**Jack M. GOOKIN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C–85–9420–DLJ.**

United States District Court, N.D. California.

Nov. 10, 1988.

Jack M. Gookin, pro se.

David Denier, U.S. Atty's. Office, San Francisco, Cal., for defendant.

## ORDER

JENSEN, District Judge.

On November 9, 1988, this Court considered defendant's motion for summary judgment on the papers. Defendant is represented by David Denier. Plaintiff is appearing pro se. For the following reasons, this Court GRANTS defendant's motion for summary judgment.

## I. BACKGROUND FACTS

In his first amended complaint, plaintiff sought monetary damages pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and the refund of a $500.00 civil penalty imposed on plaintiff, under 26 U.S.C. § 6682, for claiming excessive withholding allowances on his Form W-4.

On February 17, 1987, this Court granted partial summary judgment, dismissing the *Bivens* action against defendant. Defendant now seeks summary judgment on plaintiff's remaining claim for a refund of the penalty. The events leading up to the assessment of this penalty are as follows.

In February 1979, plaintiff obtained a charter agreement from the Universal Life Church (ULC) for the Omnipresent Church of Life (ULC Charter). During all times relevant to this case, the ULC Charter was located at plaintiff's residence.

In March 1979, plaintiff opened a checking and savings account at Crocker National Bank in the name of the ULC Charter church. Plaintiff also maintained a personal checking account at the bank.

During 1979, 1980, and 1981, plaintiff withdrew funds from his personal account, deposited the funds into the ULC Charter account, and claimed charitable contributions to the ULC on his federal tax returns for the years in the amounts of $7,250.00, $7,150.00, and $9,350.00, respectively.

In 1979, funds from the Charter account in the amount of $6,592.17 were paid directly to plaintiff and used by him to pay for his rent, utilities, food, and clothing for persons living with him.

In 1980 and 1981, funds from the Charter account in the amount of $4,413.71 and $1,962.42, respectively, were paid directly to plaintiff and used by him to pay for rent, utilities, and gym dues.

Starting in May or June 1983, plaintiff sent money to the ULC Charter through the ULC Receipts and Disbursement Program (the Program). Plaintiff received interest on money deposited with the Program, periodic statements, and disbursement checks whenever he requested money.

With the exception of rent, the funds deposited by plaintiff in the Program were used to pay the same expenses as the funds in the ULC Charter account in 1979, 1980, and 1981. Specifically, utilities, mileage, food, gym dues, and clothing for persons living with plaintiff.

When plaintiff first became involved with the ULC, he knew that the IRS questioned claimed deductions for contributions to ULC congregations in 1981 and 1982. An IRS appeals officer provided plaintiff with case law explaining why his ULC contributions were not deductible. In *Gookin v. Commissioner*, T.C.M. 1985-502 the Tax Court upheld the IRS' disallowance of plaintiff's claimed deductions for 1979, 1980, and 1981.

In September 1983, plaintiff submitted a Form W-4 to his employer, the State of California, in which he claimed 23 withholding exemptions. Plaintiff was employed full time by the State as an engineer. The claimed 23 exemptions were based in part on ULC contributions that plaintiff intended to claim, and did claim, as a charitable deduction on his 1983 federal income tax return.

## II. DISCUSSION

Both parties agree that two issues are presented by defendant's motion for summary judgment. First, whether the Form W-4 submitted by plaintiff to his employer, in 1983, resulted in a lesser amount of income tax actually deducted and withheld than was properly allowable. Second, whether there was a reasonable basis for plaintiff to claim 23 withholding allowances on his Form W-4.

### A. *Amount of Income Tax Deducted and Withheld*

■ As a result of the Form W-4 submitted by plaintiff to his employer in 1983, $1,575.90 was actually deducted and withheld from plaintiff's paychecks in the 1983 tax year. However, plaintiff's actual federal income tax liability for 1983, after

disallowance of $6,350.00 in claimed contributions to the ULC, was $1,750.00. Plaintiff claimed 23 withholding allowances when he was only entitled to 14.

Plaintiff does not contest the fact that claimed contributions to the ULC resulted in a lesser amount of income tax withheld than was properly allowable. Instead, plaintiff contends that the amount of the underpayment was insignificant and that section 6682 was therefore invoked only to penalize him because of his religious association.

This Court is not persuaded by plaintiff's argument for two reasons. First, section 6682(a)(1) requires only that the Form W-4 submitted by plaintiff result in a lesser amount of income tax actually deducted and withheld than was properly allowable. 26 U.S.C. § 6682(a)(1). Second, plaintiff offers no support for his claim that the IRS invoked section 6682 only to penalize him for his religious association.

B. *Reasonable Basis for Claiming Withholding Allowance*

Under 26 U.S.C. § 170(a)(1), a deduction is allowed for charitable contributions made within the taxable year. In pertinent part, section 170(c) defines a charitable contribution as:

> ... a contribution or *gift* to or for the use of—
> (2) a corporation, trust, or community chest, fund or foundation—
> (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes ...
> (C) *no part* of the net earnings *of which inures to the benefit of any private* shareholder or *individual*

26 U.S.C. § 170(c)(2)(B)–(C).

■ In the statutory tax sense, a gift must proceed from a detached and disinterested generosity or out of affection, respect, admiration, charity, or like impulses. *Commissioner v. Duberstein*, 363 U.S. 278, 285–86, 80 S.Ct. 1190, 1196–97, 4 L.Ed.2d 1218 (1960). When a gift is given with the expectation of "certain specified direct economic benefits within the power of the recipient to bestow directly or indi-

rectly, which might not otherwise be forthcoming," the gift will not be exempt from taxation. *Collman v. Commissioner*, 511 F.2d 1263, 1267 (9th Cir.1975). To be entitled to a deduction for a gift, "the subject matter of the gift must have been placed *beyond* the *dominion* and *control* of the donor." *Pauley v. United States*, 459 F.2d 624, 626 (9th Cir.1972) (emphasis added).

■ Defendant offers two arguments in support of its claim that plaintiff was not entitled to a charitable contribution deduction under section 170. First, defendant argues that, based on the dominion and control test, no gift was ever made to the ULC because plaintiff had sole signatory authority over the ULC Charter account. Defendant adds that plaintiff's use of the ULC Receipts and Disbursements Program does not alter its conclusion. Defendant contends that the Program served as a mere conduit and in no way implemented a shift in control over the money.

Second, defendant argues that payments from the ULC bank account, and/or the Program, for plaintiff's rent, utilities, telephone, gym dues, mileage, etc., constitute inurement under section 170(c)(2)(C), and thus preclude any charitable deductions. Defendant cites *Hall v. Commissioner*, 729 F.2d 632, 634 (9th Cir.1984), for the rule that any inurement, however small the benefit to the individual, is impermissible. Defendant also cites to 15 tax court decisions which have disallowed charitable contribution deductions in connection with ULC chapter churches conducted by "pastors" out of their residences.

Plaintiff offers two counter arguments in his opposition, both of which are extremely weak. First, plaintiff argues that he claimed 23 withholding exemptions in order to help offset his house payment. This argument, however, misses the point. Although plaintiff is allowed to claim exemptions for anticipated mortgage interest and real property taxes, the issue here is whether it was reasonable for plaintiff to claim exemptions for allowances based on ULC contributions.

Second, plaintiff argues that, contrary to defendant's assertion, the funds were only used for church-related expenses. Plaintiff offers his own affidavit in support of his argument. The affidavit, however, fails to set forth any specific facts contesting that (1) plaintiff had sole signatory authority over the ULC Charter account; (2) funds deposited in the account were used for rent, utilities, gym dues, food, and clothing; (3) the Program issued checks to plaintiff whenever requested and in no way altered his control of the funds.

### III. CONCLUSION

Based on the foregoing, this Court GRANTS summary judgment for two reasons. First, as a result of the Form W-4 submitted by plaintiff to his employer in 1983, a lesser amount of income tax was withheld than was properly allowable. $1,575.90 was deducted and withheld, but plaintiff's actual income tax liability for 1983 was $1,750.00.

Second, since the "charitable contributions" were never beyond plaintiff's dominion and control, and since plaintiff received an economic benefit, no reasonable basis for claiming the deductions under section 170 existed.

IT IS SO ORDERED.