# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## M. C. MATTHEWS v. A. B. HANSON, ADMINISTRATOR OF GLADYS MATTHEWS HANSON, DECEASED.

### September 23, 1926.

1. BANKS AND BANKING—*Ownership of Deposits—Money Deposited by One to the Credit of Another—Intent.*—Where money is deposited in bank in the name of and subject to the check of a certain person, it is *prima facie* evidence that the money is the property of that person. This rule, however, does not relieve one who claims as his own money deposited in his name by another of the burden of showing by clear and satisfactory proof that the deposit was made with the intention of those making it, at the time, to bestow upon him a complete title thereto.

2. GIFTS—*Requisites of a Gift Inter Vivos.*—To make a gift of personal property, *inter vivos,* valid, it must appear that it was the intention of the donor to part with the title and vest it in the donee, and that there was a delivery of the property, actual or constructive, which divested the donor and invested the donee with all control over the property.

3. GIFTS—*Intention to Make Gift.*—A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite to a gift *inter vivos.* And this intention must be inconsistent with any other theory.

4. BANKS AND BANKING—*Deposit by One to the Credit of Another—Evidence to Prove Ownership—Intention of the Depositor—Claim of Ownership by the Person in Whose Name the Deposit was Made.*—Where money was deposited by a mother to the credit of her daughter, who contributed no part of the funds, the daughter's claim of ownership thereof does not prove that those furnishing the money intended to make it a gift to her.

5. BANKS AND BANKING—*Deposit by One in the Name of Another—Ownership—Evidence of Intention.*—A mere deposit in the name of another, unaccompanied by acts or declarations indicating an intention to donate the fund, is not alone sufficient to prove a gift. This intention to make a gift on depositing money in the name of another may be shown either by the declarations of the depositor that the money is to belong to such other person, or by the delivery of the pass book to the donee. These circumstances, however, bear on the question

of intention, and it may be shown that a deposit in the name of another person is not a gift of money to such person, notwithstanding the fact that the deposit book has been delivered.

6. BANKS AND BANKING—*Deposits in the Name of Another—Ownership— Case at Bar.*—In the instant case, the question at issue was the ownership of a deposit, on savings account, in a bank. It appeared from the evidence that a mother conceived the idea of opening savings accounts and accumulating a "family fund" to be used as needed for the benefit of the family. In pursuance of this idea she opened the savings account in question in the name of her daughter. The money thus deposited by the mother was given to her by her husband; no part of the fund was furnished by the daughter at any time. The pass book was kept in the possession of and under the control of the mother and it was at no time under the control of her daughter. Checks were drawn on the account by the mother and by her husband. Only one check was ever signed by the daughter. In that instance, at her request, her father permitted her to sign the check which she knew was to be used by him to pay for stock purchased by him.

*Held:* That the title to the fund never vested in the daughter for her sole use and benefit.

Error to a judgment of the Circuit Court of Russell county, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendants assign error.

*Reversed and final judgment.*

The opinion states the case.

*Burns & Kidd* and *M. M. Long*, for the plaintiff in error.

*Jos. E. Duff* and *B. T. Wilson*, for the defendant in error.

WEST, J., delivered the opinion of the court.

A. B. Hanson, administrator of Gladys Matthews Hanson, deceased, brought action by notice of motion against M. C. Matthews to recover $998.03, alleged to

be due him on account of a certain fund belonging to his intestate, which Matthews drew out of the Dickenson County Bank, Inc., Dante, Virginia, on two checks drawn on that bank in favor of the St. Paul National Bank, and appropriated to his own use without the consent of Gladys Matthews Hanson. The jury returned a verdict for the plaintiff in the sum of $987.53. The judgment which was entered thereon is before us for review.

We will refer to the parties as plaintiff and defendant, with respect to their position in the lower court.

M. C. Matthews was manager of a store owned by the Clinchfield Coal Corporation and had resided at Dante, Russell county, Virginia, for over twenty years. His family consisted of his wife, his only daughter, Gladys, and three sons, the oldest of whom was Ewing Matthews. Gladys' health was poor and she was unable to engage in any remunerative employment. On July 18, 1920, at the age of eighteen, she ran away and married A. B. Hanson, and died on August 20, 1921, without issue.

Ewing Matthews, after he was sixteen years old, worked in the store with his father and in the coal mines.

In 1914, Mrs. Matthews conceived the idea of opening savings accounts and accumulating a "family fund" to be used as needed for the benefit of the family. To that end she made deposits from time to time, on savings accounts, in the Miners Bank of Commerce of Coeburn, Virginia, and in a bank at Johnson City, Tennessee. Later, the Dickenson County Bank, Inc., established a branch bank at Dante and she opened a savings account in this bank in the name of Gladys Matthews. The signature card for the deposits in the Dante bank was signed, "Miss Glady Matthews

(signed by Mrs. M. C. Matthews)," and was entirely
in the handwriting of Mrs. M. C. Matthews. The
funds which she had on savings account in the Johnson
City bank, in the name of Gladys Matthews, were
subsequently transferred to and credited to the account
in the bank at Dante. The money which was de-
posited by Mrs. Matthews was given her by her
husband out of his salary and his income derived from
outside investments, and by Ewing Matthews out of
his salary. No part of the funds was furnished by
Gladys at any time. The pass book was kept in the
possession of and under the control of Mrs. Matthews
and was at no time under the control of Gladys.
Checks were drawn on the account as occasion required
by Mrs. Matthews and by Mr. Matthews, for family
purposes.

In January, 1921, the St. Paul National Bank, St.
Paul, Virginia, offered to sell M. C. Matthews ten
shares of its capital stock for $1,050. On January 31,
1921, Matthews didn't have sufficient money to pay
for the stock, and was discussing the matter with his
wife. Gladys was present and asked him why he
didn't use the money which was deposited in her name
in the Dante bank. Yielding to her suggestion, M. C.
Matthews filled out a check on the Dante bank in
favor of the St. Paul National Bank for $923.53, the
entire balance of the savings fund which had been
deposited in her name. Gladys had a new pen and at
her request her father permitted her to sign the check.
She also, at the same time, drew a check on her personal
account, payable to the St. Paul National Bank for
$64.00. These checks were delivered to M. C.
Matthews who delivered them, with an additional sum
sufficient to make up the $1,050, to the St. Paul National
Bank and received the stock which was issued in his

name.   The check for $923.53 is the only check drawn on the savings account which was ever signed by Gladys Matthews during the seven years Mrs. Matthews was making deposits and drawing checks thereon.

On several occasions when Mrs. Matthews was at the bank making a deposit to the credit of this account she stated to the cashier, Mr. Baylor, that it was her savings account, her "family fund."

Although Gladys lived nearly seven months after she signed the two checks in controversy, and for three months a few yards from her father's home in Dante, she never made to him or any member of his family any claim to the money or the bank stock.

M. C. Matthews, his wife and Ewing Matthews are the only persons who know the object and purpose of the savings account and the intent with which the money was placed to the credit of Gladys Matthews. They testify with one voice that they never intended to part with their title to the money, that it was deposited in Gladys' name as a "family fund," and was never intended to be a gift to her.

The defendant makes several assignments of error, but in our view it is only necessary to discuss the second, which relates to the sufficiency of the evidence to support the verdict.

[1, 2] Where money is deposited in bank in the name of and subject to the check of a certain person, it is *prima facie* evidence that the money is the property of that person.   This rule, however, does not relieve one who claims as his own money deposited in his name by another of the burden of showing by clear and satisfactory proof that the deposit was made with the intention of those making it, at the time, to bestow upon him a complete title thereto.   To make a gift of personal property, *inter vivos,* valid, it must appear that

it was the intention of the donor to part with the title and vest it in the donee, and that there was a delivery of the property, actual or constructive, which divested the donor and invested the donee with all control over the property. *Mahon* v. *Johnston*, 7 Leigh (34 Va.) 317, 319, 28 C. J. 628; *Swan* v. *Swan's Ex'or*, 136 Va. 524, 117 S. E. 858.

In *Mahon* v. *Johnston, supra,* Tucker, P., said: "For, as the gift is without value received it is but reasonable that the party who is to be deprived of his property without an equivalent should be clearly proved to have actually parted with it."

[3] In 28 Corpus Juris, 627, we find this: "A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite to a gift *inter vivos.* And this intention must be inconsistent with any other theory."

In *Swan* v. *Swan's Ex'or, supra,* Kelly, P., speaking for the court, said: "In order to establish a gift *inter vivos* the facts must always be such as to show both intent and delivery."

In *Watkins* v. *Young*, 31 Gratt. (72 Va.) 90, the court, speaking through Christian, J., said: "Whether the gift was an advancement or an absolute gift, being a question of intention, the declarations of the donor, made at the time of or subsequently, are competent evidence to show such intention."

[4] The plaintiff, to establish his case, relies on the form of the account and the fact that Gladys, according to his testimony and that of Mrs. Bush, claimed to them that the money to her credit was her property and that she invested it in St. Paul National Bank stock for her sole benefit. The mere fact that the money was deposited in her name is not sufficient to give her title against those who furnished the money.

Gladys contributed no part of the funds which were deposited to her credit, and her *claim* of ownership thereof does not prove that those furnishing the money intended to make it a gift to her, which plaintiff must prove before he can recover.

[5] In 12 R. C. L., page 948, the law is stated thus: "A mere deposit in the name of another, unaccompanied by acts or declarations indicating an intention to donate the fund, is not alone sufficient to prove a gift. This intention to make a gift on depositing money in the name of another may be shown either by the declarations of the depositor that the money is to belong to such other person, or by the delivery of the pass book to the donee. These circumstances, however, bear on the question of intention, and it may be shown that a deposit in the name of another person is not a gift of money to such person, notwithstanding the fact that the deposit book has been delivered."

In *Beaver* v. *Beaver*, 117 N. Y. 431, 22 N. E. 942 (6 L. R. A. 403, 15 Am. St. Rep. 531), we find this: "In most cases where a deposit of this character is made as a gift, there are contemporaneous facts or subsequent declarations by which the intention can be established, independently of the form of the deposit. We are inclined to think that to infer a gift from the form of the deposit alone would, in the great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed and defeat the real purpose of the depositor. The relation of father and son does not in this case, we think, strengthen the plaintiff's case. It may be true that as between parent and child a presumption of a gift may be raised from circumstances, where it would not be implied between strangers. * * * But where a deposit is made in the name of another,

without any intention on the part of the depositor to part with his title, he would be quite likely to select a member of his own family to represent the account, and in this case this is the natural explanation of the transaction."

[6] The proof being that the deposits constituted a family fund and that the title to the fund never vested in Gladys for her sole use and benefit, it is manifest that the verdict as to the $923.53 is contrary to the evidence and without evidence to support it.

The verdict will be set aside and the judgment reversed; and this court proceeding to enter such judgment as the lower court ought to have entered, will enter judgment here in favor of the plaintiff for the sum of $64.00, the amount paid by plaintiff's intestate out of her personal account, with interest from January 31, 1921, till paid.

The defendant having substantially prevailed, will be allowed his costs in prosecuting his writ of error here.

*Reversed and final judgment.*