# Richmond

MAXINE JACKSON TAYLOR, ADMINISTRATRIX, ETC. v. HATTIE SMITH.

March 10, 1958.

Record No. 4758.

Present, Eggleston, Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*William Davis Butts*, for the plaintiff in error.

*Richard Newman* and *Rutherford C. Lake, Jr.* (*Newman, Allaun & Bateman*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Maxine Jackson Taylor, administratrix of the estate of Hunter Taylor, deceased, filed her motion for judgment against Hattie Smith to recover a judgment for money found in a safety deposit box rented in Hattie Smith's name and alleged to belong to decedent's estate. The case was heard by the court, *ore tenus*, without the intervention of a jury. Judgment was rendered in favor of Hattie Smith and the administratrix appealed.

The parties will be referred to as plaintiff and defendant in accordance with the respective positions they occupied in the court below. Plaintiff's decedent, who was murdered on May 28, 1951, will be referred to as Taylor.

Taylor was a nephew of defendant and was reared in North Carolina by defendant's parents. He moved to Hampton in 1931. Shortly thereafter defendant and her husband, Dewey Smith, moved from North Carolina to Hampton. Taylor joined them and lived continuously in their home as a member of the family without paying board from that time until he married plaintiff on July 23, 1948. Thereafter he visited the Smiths almost daily. He continued to keep his safe at their home and when opened subsequent to his death it contained approximately $51,000. The relationship between Smith and Taylor was one of friendship and confidence. Smith made loans to Taylor on various occasions. Defendant said Taylor very seldom discussed his business affairs with her. Taylor was generous to defendant's two children.

During the war Taylor's business was that of buying and selling rationed goods. At his death he operated a juke box business. He was also a dealer in used furniture. Federal income taxes were assessed against his estate for the years 1947 through 1951 and settlement was made by paying the sum of $42,677.34.

On January 6, 1947 Taylor and defendant went to Crown Savings Bank in Newport News where Taylor rented and paid for a safety deposit box in the name of "Mrs. Hattie Smith". While there defendant signed a card authorizing and directing the bank to permit

Taylor to enter "my box" at any time. A receipt for one year's box rent was issued in the name of "Mrs. Hattie Smith" and two duplicate keys to the box were delivered to Taylor. Defendant testified Taylor told her at the bank "that it was my box; it was my money in the box." When she was asked why he was putting money in the box for her, she replied: "Well, he said he just thought that much of me, he wanted to put something in the box in my—in my name for me." Both keys were delivered to defendant by Taylor when they returned to defendant's home. Defendant did not see Taylor put any money in the box at that time or at any time thereafter, and she never entered the box until it was forced open shortly after Taylor's death.

On occasions Taylor borrowed the keys from defendant without explanation and returned them to her. About ten days before Taylor was murdered, he borrowed the keys from defendant and did not return them. Defendant requested plaintiff to deliver them to her but she refused. Whereupon defendant caused the box to be bored open in the presence of witnesses and in it was found $8,000 in currency. She deposited in bank to the credit of Dewey Smith, her husband, $7,000 in a savings account and $1,000 in a checking account.

LeRoy Ridley, president of Crown Savings Bank testified that Taylor was not admitted to the box at the time it was rented and that the bank's records do not indicate that anyone entered the box from the day it was rented until it was bored open. Apparently the bank's records in this respect were not accurate. The box must have been entered by someone for there is no question about the fact that it contained $8,000 when it was bored open.

Plaintiff testified Taylor told her he rented the box in defendant's name because he expected trouble and did not want to lose everything he had.

Plaintiff assigns two errors. It is contended (1) the judgment is contrary to the law and the evidence, and (2) that it was error to hold that the contents of the safety deposit box were a gift to defendant.

[■ Plaintiff argues that the burden of proof was on defendant to establish the gift and not upon her to show the contrary, and to further show that the gift remained with her from its inception. (Code,

§ 55-3[1]). She maintains there was a misconception by the court as to who had that burden of proof and she directs attention to a part of the court's oral opinion: "Anyway, in this case I don't think the Plaintiff—the Plaintiff hasn't established any right to recover by the preponderance of the evidence."

It is well settled that the law does not presume a gift and where a donee claims title to personal property by virtue of a gift *inter vivos*, the burden of proof rests upon him to show every fact and circumstance necessary to constitute a valid gift by clear and convincing evidence. *Grace* v. *Virginia Trust Co.*, 150 Va. 56, 142 S. E. 378; *Nelson* v. *Liggan*, 189 Va. 637, 645, 53 S. E. 2d 798; *King, Ex'x* v. *Merryman, Adm'x*, 196 Va. 844, 86 S. E. 2d 141; *Rinehart* v. *Rinehart*, 14 Ill. App. 2d 116, 143 N. E. 2d 398.

The common elements necessary to establish a gift *inter vivos* are stated in *Thomas* v. *First Nat. Bank*, 166 Va. 497, 504, 186 S. E. 77. They are: "(1) The gift must be of personal property; (2) possession of the property must be delivered at the time of the gift to the donee, or some other for him and the gift must be accepted by the donee; and (3) the title of the property must vest in the donee at the time of the gift." 9 M. J. Gifts, § 8 p. 188.

In order for a gift *inter vivos* to be effective there must be an intention *in praesenti* on the part of the donor to make the gift and there must be such actual or constructive delivery as divests the donor of all dominion and control over the property and invests it in donee. *Swan* v. *Swan's Ex'r*, 136 Va. 496, 117 S. E. 858; *Matthews* v. *Hanson*, 145 Va. 614, 134 S. E. 568; *Payne* v. *Tobacco Trading Corp.*, 179 Va. 156, 18 S. E. 2d 281; 24 Am. Jur., Gifts § 21, pp. 738, 739, 740.

In 38 C. J. S. Gifts, § 15, p. 790, it is said: "A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift *inter vivos*. This intention must be inconsistent with any other theory."

Tested by the foregoing principles, has defendant shown by clear and convincing evidence that a valid gift of the money was made to her? At the time the box was rented and the alleged gift was made no money was seen by any witness. Ridley, the bank president, testified that Taylor did not enter the box at that time and

---

[1] Sec. 55-3. "When gift of goods or chattels invalid.—No gift of any goods or chattels shall be valid unless by deed or will, or unless actual possession shall have come to and remained with the donee or some person claiming under him. * * *"

defendant said she did not see him enter it. The record does not disclose there was any money in the box on the day of the alleged gift, except defendant said Taylor told her it was her box and her money in the box. The money must have been placed in the box by Taylor subsequent to the alleged gift, because defendant stated she never entered the box at any time prior to the day it was bored open. It is, therefore, reasonable to assume that when the transaction took place the gift was an empty box.

It is said in *Snidow* v. *First National Bank*, 178 Va. 239, 249, 16 S. E. 2d 385: "Where the nature of the thing is not capable of corporeal delivery, the delivery of the means of getting possession, or making use of the thing given, will suffice,—as, for example, the delivery of a key to a trunk, or a safety deposit box."

When the box was rented by Taylor in the name of defendant, a card was then and there signed by defendant authorizing Taylor to enter her box at any time he desired. Taylor paid the box rent for each year it was rented. While it is true he delivered to defendant the two keys to the box when they returned to her home from the bank, he borrowed the keys from time to time and at his death they were in his possession. No questions were asked by defendant and no explanation was given by Taylor as to why he wanted the keys. He could put money in the box or take all money out of it on any entry. He did not relinquish all control of the contents of the box. Defendant never had any knowledge of the amount of money it contained.

The learned trial judge stated in his oral opinion: "Now I can understand how he would get the box, would give the contents of this box to this woman that he lived with, that he was raised with, that he looked on as a sister, with the understanding if he got in a jam and he needed some of the money, he could go in and get it out. They can make any kind of arrangement they want to and that's apparently what happened here so I think that the evidence in this case discloses to me that certainly the plaintiff hasn't prevailed."

Under the proved facts and circumstances in this case, Taylor did not intend to part with title to the contents of the box, and the delivery of the keys to defendant by Taylor did not divest him of all dominion and control over the property. Hence there was not an effective delivery. Such being the case, there was no valid gift *inter vivos*.

The judgment appealed from must be reversed and in accordance

with § 8-493, Code 1950, a judgment will be entered here in favor of plaintiff against defendant in the sum of $8,000 with interest from February 8, 1957, that being the date of entry of final judgment in the lower court.

*Reversed and final judgment.*