# CIRCUIT COURT OF THE CITY OF NORFOLK

Stephanie W. Davenport,
Executrix of the Estate of
Richard H. Walters,
deceased

v.

Evelyn Walters

November 30, 2005

Case No. (Chancery) CH02-1854

BY JUDGE JOSEPH A. LEAFE

Both parties in the matter before the Court have filed exceptions to Commissioner Hume Taylor's report dealing with the Estate of Richard H. Walters. In order to provide the best direction for the parties, this opinion begins with a summary of the facts and the Court's conclusions regarding the distribution of Mr. Walters' estate, followed by an analysis of each exception the parties filed to the Commissioner's report.

When evaluating exceptions to the Commissioner in Chancery's report, the Court upholds the Commissioner's findings of fact unless they are unsupported by the evidence. *See Hill v. Hill*, 227 Va. 569, 576-77 (1984);

*Jamison v. Jamison*, 3 Va. App. 644, 645-46 (1987). The Commissioner's conclusions of law are entitled to less deference. *Hill*, 227 Va. at 576-77; *Jamison*, 3 Va. App. at 645-46.

### Summary of Facts and Conclusions

Richard H. Walters died testate on August 1, 2002, survived by his wife, Evelyn F. Walters, and two children from a prior marriage, Stephanie W. Davenport and Richard C. Walters. Ms. Davenport, the Petitioner, qualified as the executor of her father's estate on August 7, 2002, and initiated this action against Ms. Walters, the Respondent, with a Bill of Complaint for Aid and Direction of the Court on September 17, 2002. On October 11, 2002, Ms. Walters responded with an Answer to the Bill of Complaint, along with a document titled "Affirmative Pleading and Notice," which included her claims for spousal allowances pursuant to Virginia Code §§ 64.1-151.1 and 64.1-151.2.

The Petitioner asserted that the Respondent did not submit a properly authenticated election for allowances under Virginia Code § 64.1-151.5. The Commissioner agreed and concluded that the time to file an election had passed, thus barring the Respondent from pursuing her statutory allowances.

The Court finds that Ms. Walters filed a valid claim for her statutory allowances and is entitled to $15,000 in exempt property and the $18,000 family allowance. Ms. Walters signed a pre-marital agreement, waiving her statutory rights to Mr. Walters' separate property, but she retains the right to pursue the spousal allowances out of the couple's marital property.

In his Will, Mr. Walters bequeathed "all the rest of my tangible personal property" to the Respondent. The Petitioner argues that Mr. Walters intended this to be a general bequest, meaning that the tangible personal property would abate before the specific bequests to pay the debts of the estate. The Court finds that the gift of tangible personal property is a specific bequest and that the $24,600 in cash stored in a fruitcake tin passed to Ms. Walters under this provision of the Will.

Mr. Walters' estate cannot satisfy its creditors without invading the gifts under the Will. When the assets of an estate are not sufficient to pay both debts and legacies, debts come first, and legacies abate *pro rata* by the amount needed to pay the creditors. *See Chavis v. Myrick*, 190 Va. 875, 879 (1950); *Kellam v. Jacob*, 152 Va. 725, 730 (1929). The bequests of real estate abate only if the personal property in the estate is insufficient. *See Frasier v. Littleton's Ex'rs*, 100 Va. 9, 13 (1901) (quoting *Elliot v. Carter*, 50 Va. (9 Gratt.) 541 at 548-49 (1853)).

Ms. Walters stands as a creditor of the estate for her statutory allowances and for the funeral expenses she paid on behalf of the estate. Because Ms. Walters partially waived her statutory rights in the pre-marital agreement, only the gifts of marital property abate to pay her spousal allowances. The marital property consists of the $24,600 cash in the tin, $10,000 of additional tangible personal property bequeathed to Ms. Walters in the Will, and the decedent's IRA valued at $3,460. Thus, the total value of assets available to pay the statutory allowances is $38,240. According to the spousal allowance statutes, Ms. Walters takes $33,000 of that amount free and clear of any claims by estate creditors. *See* Va. Code Ann. § 64.1-151.1 and § 64.1-151.2. That leaves $5240 that can be characterized as passing to Ms. Walters under the Will. The $5240 abates ratably with the other specific gifts under the Will to pay the estate debts, of which Ms. Walters' claim for reimbursement of the funeral expenses takes priority. *See* Va. Code Ann. § 64.1-157 (establishing the order in which debts of the decedent should be paid).

The Court directs the Petitioner, as executor of her father's estate, to calculate a distribution of assets that comports with this analysis of the estate.

*Analysis of Exceptions*

*1. Valid Claim for Statutory Allowances*

One of the primary points of contention between the parties in this case is whether Ms. Walters filed a valid election for her statutory allowances. Ms. Davenport argues, and the Commissioner agreed, that Ms. Walters failed to comply with the statutory requirements for claiming her allowances and that she is now time barred from making a new election. The relevant statute is Virginia Code § 64.1-151.5, reprinted below:

> The election shall be made either in person before the court having jurisdiction over probate or administration of the decedent's estate, or by writing recorded in the court, or the clerk's office thereof, upon such acknowledgment or proof as would authorize a writing to be admitted to record under Chapter 6 (§ 55-106 et seq.) of Title 55.

The Petitioner and the Commissioner read the statute to require any elections signed on behalf of the surviving spouse to be notarized, while the Respondent argues that the notarization requirement only applies to elections

filed in "the clerk's office thereof." Mr. Philip Hatchett, the Respondent's attorney, signed the elections on behalf of Ms. Walters without a notary. He then filed the elections as pleadings in a proceeding already before the Court.

The Court finds that the language of Virginia Code § 64.1-151.5 invites more than one interpretation. When construing ambiguous statutory language, the Court may consider equitable arguments. *See Immigration Soc. of Albemarle County v. Commonwealth*, 103 Va. 46, 51 (1904). In this case, the equities weigh in favor of recognizing Ms. Walters' elections for statutory allowances. Both the Petitioner and the Court were on notice of the Respondent's intent to claim her statutory allowances two months after Mr. Walters' death. No party would be prejudiced by the Court's decision to recognize the documents filed by Ms. Walters' attorney as valid claims for statutory allowances. Therefore, the Commissioner's finding on this point is overruled, and Ms. Walters may pursue her claims for $15,000 in exempt property and the $18,000 family allowance.

## 2. Marital and Separate Property

The Petitioner argues that, even if the election is proper under the statute, the Respondent has still waived her claims to the family allowance and exempt property by signing a Pre-Marital Agreement. The Respondent and the decedent entered into a Pre-Marital Agreement on July 8, 1986, in which the Respondent "relinquish[ed] all or any of her dower rights, homestead rights, rights to spouse's award, and any other rights she might have or claim to have in any property or interest in property or estate of Walters. . . ." *Pre-Marital Agreement*, & 2.

However, Paragraph Nine of the Agreement limits the waiver to separate property only. Paragraph Nine states that the Agreement "shall not apply to `marital' property of the parties as defined in § 20-107.3 of the Code of Virginia, as amended to date." The marital property statute incorporated by the terms of the Agreement basically says that marital property is any property acquired during the marriage that is not "separate property." *See Pre-Marital* Agreement, Exhibit I (former Va. Code § 20-107.3). Separate property is in turn defined to encompass all property owned before the marriage, all property acquired during the marriage by gift or devise/descent, and all property acquired during the marriage in exchange for the sale of separate property, provided that the acquired property is also maintained as separate property during the marriage. *Id.*

The Commissioner agreed with the Respondent that the Pre-Marital Agreement does not prevent the Respondent from claiming her statutory rights to marital property. *Commissioner's Report* at 5. The Commissioner then

concluded that the only marital property in the probate estate that did not pass to the widow under the will is the decedent's Scottrade IRA, liquidated at $3,640.60. *Id.* at 6.

The Respondent excepts to this finding and lists a number of assets that should be considered marital property because they are not identified as separate property in "Schedule A" of the Pre-Marital Agreement. Specifically, the Respondent argues that the 1994 Cadillac, various bank accounts, the Wellcraft Boat, the shares of Walters and Walters stock, and the business and fishing equipment are all marital assets.

After reviewing the Commissioner's report, the briefs submitted by both parties, and the transcript and exhibits from the hearing, the Court concludes that the evidence supports the Commissioner's findings regarding marital property. The Court therefore upholds the finding that the only marital asset not passing to the Respondent under the will is the IRA account.

However, the Court additionally notes that the $34,600 in tangible personal property bequeathed to the Respondent is also marital property under the terms of the Pre-Marital Agreement. Even if Mr. Walters' income was the primary or sole source of the cash in the tin, the $24,600 accumulated after they were married, making it marital property. *See Transcript* 33. Presumably, the couple also acquired the $10,000 in household furnishings during their sixteen-year marriage. In any event, Mr. Walters did not list any household goods in Schedule A of the Pre-Marital Agreement. Therefore, the Court finds that the tangible personal property passing to Ms. Walters under the Will is also marital property for purposes of calculating the statutory allowances.

## 3. Characterization of the Cadillac as Business Property

Article Four of the decedent's Will bequeathed to the Respondent the remainder of the decedent's tangible personal property, with the caveat that "[t]angible personal property does not include assets that, in the opinion of my Executor, were held by me primarily for business or investment purposes." The Petitioner, as executor of the estate, characterized the decedent's Cadillac as a business asset. In effect, the Petitioner prevented the Cadillac from passing to the Respondent as tangible personal property and instead channeled the car into the residuary estate. The Respondent, the Petitioner, and the decedent's son are each entitled to a one-third interest in the Cadillac as "business property."

The Commissioner stated that, in his opinion, the Cadillac was not a business asset. *See Commissioner's Report* at 7. However, he conceded that, under the terms of the Will, the executor's characterization should control. *Id.* In

the Commissioner's words, "There was evidence that the car was used in the decedent's business and I cannot say that the Executor's decision was plainly wrong and, therefore, her decision . . . must stand." *Id.*

The Respondent excepts to this finding and argues that the divergence between the Commissioner's personal opinion and the conclusion of the Petitioner is proof that the Petitioner must have breached her fiduciary duty as executor of the estate. That is, by characterizing the Cadillac as a business asset, the Petitioner gave herself a one-third interest in the car.

The evidence in the record supports the Petitioner's characterization, however. Specifically, the decedent claimed on his taxes that he used the car for business 83 percent of the time. *Transcript* 100. The Court therefore upholds the Commissioner's decision to classify the Cadillac as business property.

## 4. Exceptions to the Accountings

The Respondent filed several exceptions to the accountings the Petitioner submitted as executor of the estate. The Court finds that the Respondent should pursue any concerns she has regarding the accountings in a different proceeding before the Commissioner of Accounts.

## 5. Money in the Fruitcake Tin

Around 1994, the decedent and the Respondent started saving large amounts of currency in a fruitcake tin. *See Transcript* 32. At time of the decedent's death, the Respondent said that she knew the tin was in the attic and that it contained around $20,000. *Id.* at 34, 36.

After the decedent's death, the decedent's son (Respondent's stepson) asked the Respondent if she knew where the money was located in the attic. *Id.* at 38. When she said that she did not, the son brought the fruitcake tin downstairs and gave it to her, apparently at the direction of the decedent. *Id.* The Petitioner corroborated the Respondent's testimony, stating that "I knew Dad had cash in the house. . . . He had told me about it several times. And he always said that, if something happened to him, to make sure that [the Respondent] got the money, because it would take care of her until the insurance policy came" *Id.* at 121.

The Commissioner decided that the money in the tin passed to the Respondent under the Will as tangible personal property. *See Commissioner's Report* at 7. The Respondent disagrees and argues that the cash belonged to the Respondent outright as an *inter vivos* gift from the decedent.

The Court finds that the money in the fruitcake tin belongs to the Respondent by virtue of the Will, not as an *inter vivos* gift. The Respondent cannot satisfy the burden of proof to characterize the money as a completed gift under the applicable Virginia statute, Va. Code Ann. § 55-3:

> No gift of any goods or chattels shall be valid unless by deed or will, or unless actual possession shall have come to and remained with the donee or some person claiming under him. If the donor and donee reside together at the time of the gift, possession at the place of their residence shall not be a sufficient possession within the meaning of this section.

In *Taylor v. Smith*, a 1958 Virginia Supreme Court case, the Court stated that the intention to make a gift must be inconsistent with any other theory, and that delivery of the gift must "[divest] the owner of all dominion and control over the property and [invest] it in donee." *Taylor v. Smith*, 199 Va. 871, 874 (1958). In *Taylor*, the decedent rented a safety deposit box in the name of the person claiming the *inter vivos* gift. *See id.* at 872. The decedent gave the donee the keys to the box and told her that the money belonged to her. *Id.* at 873. However, he borrowed the keys from time to time and was in possession of the keys at the time of his death. *Id.* The Court concluded that "[u]nder the proved facts and circumstances in this case, Taylor did not intend to part with title to the contents of the box, and the delivery of the keys to defendant by Taylor did not divest him of all dominion and control over the property." *Id.* at 875.

As in *Taylor*, the Respondent's testimony at the hearing was not consistent with the requirements for an *inter vivos* gift. The decedent did not relinquish dominion and control over the money in the fruitcake tin until his death; he directed his son to give the money to the Respondent after his death. Furthermore, the Respondent admitted that she was not aware of the exact location of the tin and relied upon her stepson to deliver the tin to her after the decedent's death. *See Transcript* 36. According to the statute, when the donor and donee reside in the same house, a higher standard of delivery and possession must be met. *See* Va. Code Ann. § 55-3. In this case, the Respondent has not satisfied the delivery requirements for an *inter vivos* gift. The Commissioner's factual findings on this point are consistent with the evidence.

## 6. Funeral Expenses To Be Paid by the Estate

The estate failed to pay the funeral bill when it first came due, leading the funeral home to sue Ms. Walters personally to collect the debt. The Commissioner ruled that the estate should reimburse the Respondent for the funeral home bill,

including the costs associated with defending the suit. *See Commissioner's Report* at 6-7. The Petitioner excepted to this finding, arguing that the funeral home bill was outside the scope of the issues raised by the parties and that there was insufficient evidence for the Commissioner to rule on the issue.

However, at the hearing the Petitioner conceded that the estate was responsible for the funeral home bill, stating that "[t]here is no question about responsibility as far as the funeral bill. [Ms. Davenport] has never denied responsibility for the funeral bill. We do not do it here." *See Transcript* 143. The Court upholds the Commissioner's ruling that the estate must reimburse Ms. Walters for the funeral expenses, including the associated attorney's fees.

*7. Attorney's Fees*

The Petitioner claims that the Commissioner should have awarded her attorney's fees in relation to the Respondent's claims for statutory allowances because the Respondent failed to make a timely election and because the Respondent, "as found by the Commissioner, did waive her right to such claims in a Pre-Marital Agreement entered into by the decedent and her." The Petitioner also moves for sanctions.

The Petitioner is not entitled to attorney's fees or sanctions. The Respondent did not waive her rights to statutory allowances in marital property, only in the separate property. Furthermore, although the Commissioner found that the Respondent did not make a timely election under § 64.1-151.5, the Respondent's argument for an alternative construction of the statute was reasonable and persuasive to this Court.

*8. Gift of "The Rest of My Tangible Personal Property" is a Specific Bequest*

In Article Four of the decedent's Will, he bequeathed "all the rest of my tangible personal property to my wife if she survives me." The Will further stated that the gift did not include any personal property used for business or investment purposes, nor any personal property that the decedent might bequeath by a written list pursuant to Va. Code § 64.1-45.1. The Petitioner argues that the gift is both a general and a residuary legacy and, therefore, should abate first to pay the estate's creditors. *Id*. at 5.

When a testator's assets at death are insufficient to satisfy the claims against his estate, the estate's debts are paid before legacies. *See Chavis v. Myrick*, 190 Va. 875, 879 (1950). Furthermore, all legacies are subject to abatement to pay estate debts. *See id*. (finding that when settling claims against

the estate, "debts come first, and legacies abate, that is, they are reduced by the amount needed to pay debts"). Under Virginia law, there is a well-established hierarchy for the abatement of gifts under a will. Bequests of personal property abate first, in the following order: first the residuary legacy, then general legacies, followed by specific legacies. The legacies in each category abate ratably. *See Frasier v. Littleton's Ex'rs*, 100 Va. 9, 13 (1901) (quoting *Elliott v. Carter*, 50 Va. (9 Gratt.) 541 at 548-49. The bequests of real estate abate only if the personal property in the estate is insufficient. *Id.*

The Petitioner mistakenly characterizes the gift to Ms. Walters as a residuary and general bequest. First, the Will contains a clearly designated residuary clause leaving all the residue of the testator's property of any kind to his wife and two children in equal shares. *See Decedent's Will* at Art. Nine. Second, the gift appears to be a specific, rather than general, bequest.

One of the primary distinctions between the two categories is that specific bequests are subject to ademption by extinction, while general bequests are not. *See Hood v. Haden*, 82 Va. 588, 599 (1886); *May v. Sherrard's Legatees*, 115 Va. 617, 626 (1913). That is, if the property designated by a specific bequest is no longer in the estate at the time of the testator's death, the gift is void. *See Hood*, 82 Va. at 589. A general bequest, on the other hand, may be satisfied out of the general assets of the estate. *See Chavis v. Myrick*, 190 Va. 875, 879 (1950).

The gift to Ms. Walters of "all the rest of my tangible personal property" is subject to ademption by extinction. If the decedent had used a list to bequeath all his non-business, tangible personal property to other people, Ms. Walters would take nothing under Article Four of the Will. Alternatively, the decedent could have sold all of his non-business personal property before his death, again leaving Ms. Walters with a void gift. Unlike a general bequest, "all the rest of my tangible personal property" cannot be satisfied out of other assets of the estate. Thus, the gift fits more appropriately in the category of specific bequests. *See Estate of Brockenbrough*, 68 Va. Cir. 95 (Nelson County 2005) (finding that the gift of "all my tangible personal property" was a specific bequest, "subject to ademption by sale, destruction, or conveyance prior to death").

The estate should first look to the residual personal property to pay its creditors. If the residuary assets are insufficient, the specific bequests of personal property should abate ratably. The Will contains no general bequests.

The August 23, 2005, letter from the Petitioner requests permission to use Ms. Walters' unclaimed portion of the proceeds from the sale of the home to pay estate debts. *See Petitioner's Letter* at 5. However, the Will contains several specific bequests of valuable personal property, including a boat, fishing equipment, and shares of stock. The personal property should abate first before

the estate uses proceeds from the sale of real property to pay creditors. *See Frasier v. Littleton's Ex'rs*, 100 Va. 9, 13 (1901) (quoting *Elliot v. Carter*, 50 Va. (9 Gratt.) 541 at 548-49 (1853)).

## Conclusion

The Respondent is entitled to $33,000 in spousal allowances out of the marital property in the estate. All the bequests of personal property abate ratably to reimburse the Respondent for the funeral expenses and to pay the taxes and any other debts of the estate. The Court directs the Petitioner to distribute the assets of the estate in compliance with this opinion.