COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Friedman and Callins
Argued at Leesburg, Virginia

DAN SHANNON

v.      Record No. 1958-22-4

CURTIS O. SMALLS, II, SOMETIMES KNOWN AS
 TONY SMALLS

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
APRIL 16, 2024

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David A. Oblon, Judge

Samuel A. Leven (The Baldwin Law Firm, LLC, on brief), for
appellant.

No brief or argument for appellee.


The Circuit Court of Fairfax County dismissed Dan Shannon's breach of contract claim

involving a promissory note against Curtis O. Smalls, II (sometimes known as Tony Smalls) for

lack of consideration. On appeal, Shannon challenges the circuit court's holding that lack of

consideration is not an affirmative defense. Shannon then argues that the circuit court erred when it

determined that Shannon bore the burden of proving that the funds he extended to Smalls were

loans rather than gifts. Shannon also contends that the circuit court erred in ruling that the evidence

supported its finding that the funds were gifts rather than a series of loans. Finally, Shannon

challenges the circuit court's denial of his request for attorneys' fees in accordance with the terms of

the promissory note, as well as the circuit court's denial of his motion to reconsider.

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

I. BACKGROUND

"On appeal, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the prevailing party at trial." *Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals*, 292 Va. 257, 280 (2016). Therefore, the evidence related to the issues raised in Shannon's assignments of error must be viewed in the light most favorable to Smalls as he was the prevailing party in the circuit court.

The parties presented evidence at trial that Shannon and Smalls met in late 2014 while the two were incarcerated at the Fairfax County Adult Detention Center. During their time imprisoned together, the two men became friends, and they continued to communicate with each other via phone and email even after Smalls was transferred to another correctional facility and Shannon was released from jail after he was acquitted of the charges against him. Shannon testified that on December 22, 2014, Smalls first asked him for money to help the mother of his children, and Shannon arranged to have $600 transferred to her. Shannon recounted that after making the initial money transfer, Smalls made more requests for more money which "slowly grew over three and a half years from occasional requests in 2015, 2016 it got pretty intense, and about once a month or twice a month he'd ask for money." Shannon testified that Smalls continued to request money, items, and other forms of assistance from Shannon, even after Smalls was released from State custody on April 29, 2019.

The record contains emails that Shannon and Smalls sent to one another via JPay, a prison messaging platform, detailing some of Smalls's requests for money and Shannon's concerns over providing additional funds. For example, in an email from Smalls to Shannon on October 19, 2015, Smalls wrote, "I could really use funds on the email account and a little on the commissary account. . . . I simply could use your help with these requests and will add to teh [sic] payback option previously discussed." In a November 28, 2015 email, Shannon responded to Smalls and explained,

> Just so you know, every dollar I lend you is money I've borrowed on my credit card, so I don't have unlimited funds. And it's a big risk of whether or not I'll ever get paid back. . . . So I'm especially cautious since I've already lent you $1,049.21 and every time you promise me you won't need any more money you always come back later asking for more.

The parties executed three promissory notes while Shannon was out of jail and Smalls remained in jail. The first promissory note, titled "Promissory Note," was signed by Smalls and notarized on December 31, 2017 (the "December 2017 Note"). Shannon testified that Smalls drafted and mailed the December 2017 Note to him following their conversation about the language and terms although Smalls denies doing so. Under the terms of the December 2017 Note, Smalls promised to repay Shannon "for all outstanding loans" made "from December 14, 2014, through December 31, 2017, including ongoing accruing interest compounded daily at the published Visa Card Daily Variable Rate on the unpaid daily ending balance owed." Smalls further promised that, "beginning January 1, 2018," he would pay Shannon "a minimum of $300.00 per month until this debt is paid in full no later than December 31, 2018." Smalls also agreed "to pay any and all attorney fees and expenses to collect such outstanding loans including ongoing accruing interest and any court sanctioned penalties" in the event he failed to "repay the aforesaid loans and ongoing accruing interest." The December 2017 Note stated that the "unpaid daily balance owed as of December 31, 2017 will be $3,603.94; composed of $3,077.42 in loans and $526.50 in accrued interest."[1]

The record shows that Smalls continued to make requests for money from Shannon in the years that followed, and Shannon continued to provide Smalls with periodic payments. In an email from Smalls to Shannon on March 1, 2017, Smalls requested money for his phone account and wrote, "So in effect, my total bill becomes what? $3525…with interest?" Nearly two years later, in

---

[1] The December 2017 Note contains a $0.02 discrepancy between the stated unpaid daily balance owed and the stated loan amount and accrued interest amount.

an email from Smalls to Shannon on January 22, 2019, Smalls again requested money for his phone account and wrote, "We have a contrat [sic] on a loan so please just add to my loan as I have no oter [sic] resource and all is time sensitive." In an email from Smalls to Shannon on March 4, 2019, Smalls proposed the following arrangement:

> Now I am sending you a notarized request for a loan that includes the $4400 I owe. Should you agree I am authorizing one of 2 methods for repayment. I will authorize WalMart Visa (Green Dot) to give you a card on my account and you already have access to take weekly amount beginning first payday for me which will be in late May or early June, or I can have the bank associated with my card do weekly payments electronically to your account? I am drafting particulars in Law Library and will send out by tomorrow for you to review and then we can discuss.

Smalls then wrote to Shannon, "I will never 'stiff' you as I have no other place to turn and want to get this right!" Smalls reiterated in a March 3, 2019 email to Shannon, "Dan I am not going to stiff you on teh [sic] loan as I will need your help. . . . I will take care of my loan and need to discuss sevral [sic] things with you!"

On March 25, 2019, Smalls signed and notarized a second promissory note (the "March 2019 Note"), also titled "Promissory Note," which superseded the December 2017 Note. The March 2019 Note covered "all outstanding loans" made by Shannon to Smalls "from December 14, 2014 through April 29, 2019 including ongoing accruing interest compounded daily at the published Visa Card Daily Variable Rate on the unpaid daily ending balance owed." Under the terms of the March 2019 Note, Smalls promised that "the outstanding loan balance and all ongoing accruing interest will be paid in full no later than April 29, 2020." Smalls also promised that, "beginning no later than May 29, 2019," he would "pay a minimum of $83.00 per week to Dan Shannon until this debt is paid in full no later than April 29, 2020." The March 2019 Note stated that the "unpaid daily ending balance owed as of March 31, 2019 will be $4,310.59." In addition, the March 2019 Note provided Shannon with several methods for default payment collection, and also contained a

- 4 -

provision obligating Smalls to pay "all attorney fees, costs and expenses to collect such outstanding loans, accruing interest and any court sanctioned fees and penalties." In an email on March 28, 2019, Smalls confirmed to Shannon, "You have my signed consent to the promissory agreement to all your terms. . . . Dan I am trying to make sure I plan for everything and be able to meet my obligations as well as repay my loan to you."

On April 13, 2019, Smalls signed and notarized a third promissory note, titled "Supplemental Promissory Note" (the "April 2019 Note"). Under the terms of the April 2019 Note, Smalls promised "to repay Dan Shannon for additional loans to pay for the actual cost of" expenses related to Smalls's forthcoming release from prison, including a motel room, new clothing, a new cell phone, a new laptop, and other expenses. Smalls further promised "not to incur any additional debt in any form until payment is paid in full for that obligated by me in the March 25, 2019 Promissory Note and this Supplemental Promissory Note without the written approval of Dan Shannon; approval which will not be unreasonably withheld." In addition, Smalls promised to provide Shannon with an "accounting of all existing debts obligated or owed" by him, as well as to keep Shannon apprised of his contact information, employer information, and details of his financial accounts. The April 2019 Note expressly stated, "All terms and conditions for failure to pay on time or at all for the above loans are the same as stated in the March 25, 2019 Promissory Note."

Smalls did not make any payments to Shannon on any of the promissory notes. On May 27, 2022, Shannon brought a civil action against Smalls in the circuit court for breach of the March 2019 Note and the April 2019 Note. Shannon sought judgment in the total amount of $8,643.50, plus his reasonable costs and attorneys' fees. At trial, Shannon testified that the various amounts of money that he paid to Smalls were loans "[f]rom the very start" and that, before executing the promissory notes, he and Smalls "would, in fact, go over the details and wording of all these promissory notes together." Shannon recalled that he and Smalls "talked about interest rates" and

"talked about timing" over the phone before agreeing to the language in the promissory notes. Shannon moved into evidence his BB&T Visa card statements showing payments that he made for Smalls between July 2015 and March 2019. Notably, two payments had a posted date of March 25, 2019, including a $30 payment transferred on March 23, 2019, and a $20 payment transferred on March 24, 2019. The record also shows that the interest rate on Shannon's BB&T Visa credit card was 10.4000% in March 2019.

Smalls, in contrast, testified that when Shannon first transferred money to him in 2014:

> [A]t that point, it was not loans. It was a friend helping another friend out. There was no discussion about loans. That didn't come until I was actually in the Department of Corrections. That being said, I had always felt like, as you would with any friend, when I'm — when I get myself situated, I would pay you back. Now, there was no talk of interest or anything of that nature. That conversation came about again, years later when I was in the Department of Corrections.

Although Smalls acknowledged that he signed the promissory notes, when asked whether he had read the promissory notes before signing them, Smalls replied, "No, I didn't read them in their entirety, but I — I did sign them, yes." Smalls maintained, "I signed them under duress. I was in prison, and they were given to me." He claimed that he did not draft the promissory notes and did not propose their language or terms. He also stressed that he had no means or opportunity to earn money while in prison.

After hearing argument and taking evidence, the circuit court issued an opinion letter on November 28, 2022, finding that the April 2019 Note "violates Virginia Code § 6.2-303(A) and is void." However, the circuit court permitted Shannon to recover the amount of the principal that Shannon extended to Smalls on the April 2019 Note.[2] In addition, the circuit court found that the March 2019 Note is unenforceable because "(1) it lacked consideration and, alternatively, (2) it

---

[2] In the order attached to its opinion letter, the circuit court ordered Smalls to pay Shannon $4,332.91, plus interest at the rate of 6% from November 28, 2022 until paid.

improperly and inaccurately recast a series of gifts from Shannon to Smalls as loans." In making its ruling, the circuit court stated, "Shannon alleges he extended loans to Smalls in December 2014, and continued until December 2017, with the March 2019 Note memorializing the past payments. Thus, even according to Shannon, the March 2019 Note merely recounted alleged prior agreements. There was no new consideration to support it." Acknowledging that "Smalls did not raise lack of consideration as a defense in his pleadings, as argued by Shannon during closing arguments," the circuit court nevertheless found "as fact that Shannon failed to persuasively prove this element." The circuit court then ruled in the alternative, "Even if the loan contract had been supported by consideration, the Court finds as fact that the money Shannon gave to Smalls was a series of gifts and not loans. On this point, simply stated, the Court did not find Shannon credible." Finally, the circuit court denied Shannon's request for attorneys' fees.

On December 2, 2022, Shannon filed a motion to reconsider in the circuit court, arguing (1) that Smalls failed to plead the affirmative defense of lack of consideration, (2) that Smalls bore the burden of proving by clear and convincing evidence that the funds given to him by Shannon were gifts, and (3) that the evidence supported a finding that the payments were intended to be loans. In his motion to reconsider, Shannon maintained that "the documents admitted into evidence show that the payments were always considered loans and that additional loans were made between the date of the December 31, 2017 promissory note and the March 25, 2019 promissory note." Shannon also pointed out that "the amount owed in the March 25, 2019 note is nearly $1,000 higher than the amount owed in [the] December 31, 2017 promissory note — this is because additional money was loaned between the dates of those notes which could not at all be in question as to being loans."

By final order entered on December 9, 2022, the circuit court denied Shannon's motion to reconsider without holding a hearing and found that "Shannon did not intend for the money to be a

- 7 -

loan." The circuit court held that it was actually Shannon who bore "the burden of proving the money he gave Smalls was a loan." The circuit court further ruled that, "even if Smalls carried the burden of proving the money was not a loan, the Court finds in the alternative that Smalls proved the money from Shannon was not a loan." Shannon appeals the circuit court's judgment to this Court only as it pertains to the March 2019 Note.

## II. ANALYSIS

"Motions . . . to reconsider a prior ruling involve matters wholly in the discretion of the trial court." *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013) (citations omitted). Therefore, as the Supreme Court has stated, "We review a trial court's denial of a motion to reconsider for an abuse of discretion." *Winston v. Commonwealth*, 268 Va. 564, 620 (2004) (citing *Murphy v. Commonwealth*, 246 Va. 136, 148, *cert. denied*, 510 U.S. 928 (1993)). However, "'[a circuit] court by definition abuses its discretion when it makes an error of law. . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (alteration in original) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)). "In determining whether the trial court made an error of law, 'we review the trial court's statutory interpretations and legal conclusions *de novo*.'" *Rollins v. Commonwealth*, 37 Va. App. 73, 79 (2001) (quoting *Timbers v. Commonwealth*, 28 Va. App. 187, 193 (1998)).

A. The Circuit Court's Ruling that the Payments were Gifts Instead of Loans

On appeal to this Court, Shannon argues,

> The trial court erred when it held that it was the appellant's burden to prove that funds he had given to the appellee (which were later memorialized in the promissory note at issue in Count I of the Complaint) were loans, when in fact it was the appellee's burden to prove by clear and convincing evidence that they were gifts.

Shannon further argues, "The evidence does not support the trial court's findings that the funds given to the appellee by the appellant were gifts and that the promissory note at issue in Count I of the Complaint therefore lacked consideration."

The Supreme Court has held that whether a transaction "constituted a gift is a question of law. As such, we review the circuit court's resolution on that issue de novo." *Smith v. Mountjoy*, 280 Va. 46, 53 (2010) (citing *Oraee v. Breeding*, 270 Va. 488, 494 (2005)). The Supreme Court has further held, "Questions relating to burden of proof, including the standard of proof and which party bears the burden to meet it, are questions of law reviewed de novo." *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Mulford v. Walnut Hill Farm Group, LLC*, 282 Va. 98, 111 (2011)).

"Whether a transaction is a gift or loan is always determined by the intention of the donor. This intention must be gathered from the facts and circumstances attending the transfer of the property." 12A Michies Jurisprudence Loans § 3. "A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite to a gift *inter vivos*. And this intention must be inconsistent with any other theory." *Matthews v. Hanson*, 145 Va. 614, 619 (1926); *see also Monds v. Monds*, 68 Va. App. 674, 691 (2018) ("[D]onative intent must be supported by a more convincing offer of proof."). "In the absence of evidence to the contrary, a loan, rather than a gift, will be presumed." 12A Michies Jurisprudence Loans § 3; *see also Ficklin's Ex'r v. Carrington*, 72 Va. (31 Gratt.) 219, 221 (1878).

The Supreme Court has clearly explained, "It is well settled that the law does not presume a gift and where a donee claims title to personal property by virtue of a gift *inter vivos*, the burden of proof rests upon him to show every fact and circumstance necessary to constitute a valid gift by clear and convincing evidence." *Rust v. Phillips*, 208 Va. 573, 578 (1968) (citing *Grace v. Virginia Trust Co.*, 150 Va. 56 (1928)). "To establish the existence of a gift, the donee

must prove by clear and convincing evidence: '(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee.'" *Utsch v. Utsch*, 38 Va. App. 450, 458 (2002) (quoting *Theismann v. Theismann*, 22 Va. App. 557, 566, *aff'd on reh'g en banc*, 23 Va. App. 697 (1996)); *see also Robinson v. Robinson*, 46 Va. App. 652, 665 (2005) (*en banc*); *Dean v. Dean*, 8 Va. App. 143, 146 (1989).

The circuit court here erred in holding that Shannon had "the burden of proving the money he gave Smalls was a loan." To the contrary, our case law discussed *supra* clearly dictates that Smalls (as the purported donee) bore the burden of proving by clear and convincing evidence that Shannon (the purported donor) intended for the payments to be gifts. *See Utsch*, 38 Va. App. at 458. Consequently, the circuit court made an error of law by placing the burden on Shannon.

In addition, the circuit court was plainly wrong in holding "that Smalls proved the money from Shannon was not a loan." The evidence presented at the trial before the circuit court is clear that Shannon intended to make a series of loans to Smalls — and that Smalls acknowledged they were loans that he promised to pay back. Shannon testified that the payments he paid to Smalls were loans "[f]rom the very start," and Smalls testified that he did, in fact, sign all three promissory notes. As early as 2015, Smalls emailed Shannon, "I could really use funds on the email account and a little on the commissary account. . . . I simply could use your help with these requests and will add to teh [sic] *payback option previously discussed*." (Emphasis added). Shannon then clarified to Smalls in an email,

> Just so you know, every dollar I *lend* you is money I've borrowed on my credit card, so I don't have unlimited funds. And it's a big risk of whether or not I'll ever get *paid back*. . . . So I'm especially cautious since I've already *lent* you $1,049.21 and every time you promise me you won't need any more money you always come back later asking for more.

(Emphases added).

In a March 2017 email to Shannon, Smalls acknowledged his debt, writing, "So in effect, my total bill becomes what? $3525…with interest?" Smalls further acknowledged in a January 2019 email, "We have a contrat [sic] on a *loan* so please just add to my *loan* as I have no oter [sic] resource and all is time sensitive." (Emphases added). Smalls even proposed a loan arrangement in March 2019:

> Now I am sending you a notarized request for a *loan* that includes the $4400 I owe. Should you agree I am authorizing one of 2 methods for repayment. I will authorize WalMart Visa (Green Dot) to give you a card on my account and you already have access to take weekly amount beginning first payday for me which will be in late May or early June, or I can have the bank associated with my card do weekly payments electronically to your account? I am drafting particulars in Law Library and will send out by tomorrow for you to review and then we can discuss.

(Emphasis added). Smalls reassured Shannon in an email that same month, "Dan I am not going to stiff you on teh [sic] *loan* as I will need your help. . . . I will take care of my *loan* and need to discuss sevral [sic] things with you!" (Emphases added). Finally, in an email on March 28, 2019, Smalls confirmed to Shannon, "You have my signed consent to the *promissory agreement* to all your terms. . . . Dan I am trying to make sure I plan for everything and be able to meet my obligations as well as *repay my loan* to you." (Emphases added).

The mere fact that Smalls testified that he believed that Shannon's payments were gifts, given all of the other circumstances of this case, does not come close to supporting a conclusion by clear and convincing evidence that Shannon intended the payments to be gifts. Even if Smalls acted under the belief that Shannon's payments were simply "a friend helping another friend out," Smalls's theory alone cannot constitute a "clear and unmistakable intention on the part of the donor to make a gift." To the extent that the trial judge found that Smalls showed that Shannon intended these payments to be gifts, that finding was plainly wrong, given all the evidence and reasons noted *supra*. Consequently, for all of these reasons, we hold that the circuit court erred in

ruling that the payments Shannon made to Smalls, as memorialized by the March 2019 Note, were gifts.

B. The Circuit Court's Failure to Consider Any Payments Made After December 2017 in Ruling on the Motion to Reconsider

The circuit court also erred by denying Shannon's motion to reconsider. The Supreme Court has held that "in cases of notes for the payment of money, a valuable consideration is *prima facie* presumed at least where an action of debt is brought on the writing." *Jones v. Obenchain*, 51 Va. (10 Gratt.) 259 (1853) (citing *Peasley v. Boatwright*, 29 Va. (2 Leigh) 195, 198-99 (1830)). "The production alone of a negotiable note, check or bill of exchange, furnishes *prima facie* evidence of consideration, and casts upon the *defendant* the burden of proving the want or failure thereof, and in an action upon such instrument it is unnecessary to aver a consideration in the declaration." *Id.* (emphasis added) (citing *McClain v. Lowther*, 35 W. Va. 29 (1891); *Peasley*, 29 Va. (2 Leigh) at 198-99).

As noted *supra*, the circuit court issued its opinion letter and entered an accompanying order on November 28, 2022. In making its ruling, the circuit court stated, "Shannon alleges he extended loans to Smalls in December 2014, and continued until December 2017, with the March 2019 Note memorializing the past payments. Thus, even according to Shannon, the March 2019 Note merely recounted alleged prior agreements. There was no new consideration to support it." Considering only the payments made between December 2014 and December 2017, the circuit court found that the March 2019 Note was "unsupported by consideration, and thus unenforceable."

Shannon then timely filed his motion to reconsider on December 2, 2022, which the circuit court ruled on by final order entered on December 9, 2022. *See* Rule 1:1. In his motion to reconsider, Shannon specifically argued that "the documents admitted into evidence show that the payments were always considered loans and that *additional loans were made between the date of*

*the December 31, 2017 promissory note and the March 25, 2019 promissory note*." (Emphasis added). Shannon also highlighted the fact that "the amount owed in the March 25, 2019 note is nearly $1,000 higher than the amount owed in [the] December 31, 2017 promissory note — this is because *additional money was loaned between the dates of those notes* which could not at all be in question as to being loans." (Emphasis added). In addition, the record before the circuit court when ruling on the motion to reconsider included several of Shannon's BB&T Visa card statements, notably one statement that contained two payments with a posted date of March 25, 2019 (the same date that Smalls signed the March 2019 Note) — a $30 payment transferred on March 23, 2019, and a $20 payment transferred on March 24, 2019.

Shannon's argument concerning consideration was squarely and timely before the circuit court, and the circuit court had a full and fair opportunity to consider the argument. However, the circuit court erred by only considering the payments made between December 2014 and December 2017 — as well as by failing to consider the additional payments made between December 2017 and March 2019 that were in evidence before the circuit court when it ruled on the motion to reconsider (and which may well constitute consideration for the March 2019 Note). Consequently, we remand this matter back to the circuit court for it to consider all of the evidence and exhibits in the record to determine whether the March 2019 Note was a valid, enforceable promissory note supported by consideration.[3]

---

[3] Shannon argues in his first assignment of error on appeal, "The trial court erred when it held that a lack of consideration on a promissory note is not an affirmative defense and therefore that such defense had not been waived as to Count I of the Complaint despite the appellee having failed to raise such a defense in his pleadings." However, having found that Smalls bore the burden of proving that the payments made by Shannon were gifts and given our instructions on remand for the circuit court to consider all of the payments in the record between December 2014 and March 2019, we need not reach the issue of whether lack of consideration is an affirmative defense because it is not necessary for us to reach that decision in order to make our holdings in this case. "As an appellate court, we seek the best and narrowest ground available for our decision." *Bista v. Commonwealth*, 78 Va. App. 391, 421 n.12 (2023) (*en banc*) (quoting *Harvey v. Commonwealth*, 65 Va. App. 280, 285 n.2 (2015)).

C. <u>The Circuit Court's Ruling on Attorneys' Fees</u>

Shannon also argues on appeal, "Because the trial court erred in holding the promissory note at issue in Count I of the Complaint was invalid and unenforceable, the trial court also erred in failing to award the appellant his attorneys' fees as required by that note."

The Supreme Court has consistently stated, "Generally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant." *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449 (1991); *CUNA Mut. Ins. Soc. v. Norman*, 237 Va. 33, 38 (1989) (citing *Gilmore v. Basic Industries*, 233 Va. 485, 490 (1987)).

> In Virginia a stipulation in a note for compensation to attorneys for collection fees incurred, if payment on the note is not made at maturity, is a valid, binding and enforceable contract. If the attorneys' fees are incurred under the conditions set out in the notes, they are a part of the same obligation as the principal and interest.

*Schwab v. Norris*, 217 Va. 582, 587 (1977) (quoting *Merchants, Etc., Bank v. Forney*, 183 Va. 83, 94 (1944)). Where, as here, "an instrument forms the basis of a debt and authorizes an award of attorney's fees, but does not provide a formula for liquidating the amount of those fees at the time of entry of a judgment, no award of fees may be made except for fees actually incurred." *Safrin v. Travaini Pumps USA, Inc.*, 269 Va. 412, 418 (2005) (citing *Cox v. Hagan*, 125 Va. 656, 680 (1919)).

Here, the March 2019 Note contains the following attorneys' fees provision:

> If I [Smalls] fail in any way to fulfill my obligations to repay the aforesaid loans and ongoing accruing interest as agreed above, and if Dan Shannon is unable to collect part or all of any unpaid loans and accruing interest by the collection method in either (a), (b) or (c) above or any combination thereof, I also agree to pay any all attorney fees, costs and expenses to collect such outstanding loans, accruing interest and any court sanctioned fees and penalties. I also agree that interest at the above stated rate will continue to accrue until all loans, interest, attorney fees, costs, expenses, court

sanctioned fees and penalties to be paid to Dan Shannon and his attorney are paid in full.

Therefore, on remand, if the circuit court concludes that the March 2019 Note was supported by consideration and is, in fact, enforceable, the circuit court should grant Shannon his attorneys' fees actually incurred in accordance with the conditions set out in the March 2019 Note.

### III. CONCLUSION

In short, the circuit court erred by holding that Shannon bore the burden of proving that the payments of money he gave to Smalls were a series of loans. The circuit court further erred by holding, in the alternative, that Smalls proved that Shannon intended for the payments to be gifts. Smalls (as the donee) was required to prove each element of a gift by clear and convincing evidence, and he simply failed to meet his burden with respect to showing Shannon's donative intent by clear and convincing evidence. In addition, because the circuit court only considered payments made between December 2014 and December 2017, when more payments were made in March 2019 at about the time Smalls signed the March 2019 promissory note, we remand to the circuit court for it to review the exhibits and evidence in the record to determine if the evidence shows consideration for Smalls's signing of the March 2019 promissory note – for example, the payments that Shannon made to Smalls in March 2019.

Consequently, for all of the foregoing reasons, we reverse the circuit court's judgment, vacate its order finding that the payments memorialized by the March 2019 Note were gifts, and remand this matter back to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*